## ACREE *v.* THE STATE.

The statutory inhibition against setting on fire "any woods, lands, or marshes, . . . except between the twentieth of February and the first of April annually," after due notice to adjacent land proprietors (Penal Code, §§ 229-232), was not intended to apply to a farmer who, in the usual course of husbandry, sets fire to weeds, brush, grass, or stubble on a small area of land which is under cultivation or which he uses as a pasture, that he may suc-

cessfully carry on his farming operations by preparing his fields for the plow and freeing his pasture of rank growth and worthless herbage.

Argued February 20,—Decided March 2, 1905.

Indictment for firing woods. Before Judge Holden. Taliaferro superior court. January 7, 1905.

*Samuel H. Sibley* and *J. A. Beazley,* for plaintiff in error.
*David W. Meadow, solicitor-general,* contra.

EVANS, J. The indictment under which the defendant was convicted contained two counts; the first was for firing lands without first giving the statutory notice, and was framed under the Penal Code, §§ 229–231; the second count was for permitting fire to get into the lands of another through neglect, and was framed under the Penal Code, § 232. The jury found him guilty of the charge contained in the first count, and not guilty of the charge made in the second count. He made a motion for a new trial, to the overruling of which he excepts. On the trial it was proved that the defendant rented a farm and pasture lands from the prosecutor. On the day previous to the fire, he burned the upper part of his field, and his landlord called his attention to the possible danger of the fire spreading, and admonished him to be careful. The next day, the defendant burned the lower end of his field, and also the briers and grass on the land which had been set apart as a pasture. The fire extended beyond the lands rented by the defendant and burned over adjoining lands, destroying some rails belonging to the prosecutor. The fire was set out some time in March, and no notice to adjacent landowners was given of the time of setting it out. The defendant admitted setting out the fire, but said it was necessary to burn the grass and briers in order that the land might be put in a tillable condition and the pasture be made available for use. There was some conflict in the testimony as to whether the fire was negligently put out; but as the jury acquitted him of that charge, it is unnecessary to set forth the evidence bearing on this branch of the case.

Counsel for the plaintiff in error contend, that, upon the facts appearing in the record, the conviction of the defendant was contrary to law, for the reason that the sections of the Penal Code under which the indictment was framed are not applicable to small areas of land which are in the control of tenants for the

purpose of cultivation and pasturage; that these sections only apply to woods, marshes, and extended tracts of waste land, and not to restricted areas devoted to husbandry. We have undertaken to trace the history of this legislation, in order that we might arrive at the true legislative intent. As early as the year 1811, an act was passed prohibiting persons from setting fire to the woods at improper seasons of the year; but in the second section of that act its operation was limited to eight named counties located in the southern portion of this State. See Lamar's Dig. 553. Subsequently, in 1847, an act was passed for the protection of those engaged in the turpentine business, and to prevent setting fire to woods, lands, or marshes, except at certain times and under certain circumstances. The operation of this act was limited to six designated counties, also located in the same general section of the State. See Cobb's Dig. 64. The provisions of this act are, save as to minor particulars, the same as those embraced in our present Penal Code, §§ 229–232. We have been unable to find any other legislation upon this particular subject-matter prior to the adoption of the Code of 1861, when substantially the same regulations as were embraced in the act of 1847 were set forth in §§ 1405 et seq. of that code, and their operation extended to the entire State. The codifiers evidently converted the local act of 1847 into a general law. A footnote to §§ 1456 et seq. of the Code of 1873 refers to that local act as the source from which the provisions of these sections were derived. Thus it will be seen that the purpose of the legislature was, primarily, to protect the turpentine industry. As is generally known, the pine trees from which turpentine was taken at that period of our development were located in a section of the State which was covered with wire-grass. This wire-grass was a luxuriant growth, and its blades were killed by the frosts of winter, leaving spread over the ground a large amount of dry and highly combustible matter. The turpentine farms were not segregated from other lands except by the invisible land-lot lines of the different owners; and to protect this growing industry, and to prevent a destruction of the trees which had been boxed for turpentine, the above-mentioned acts were passed. None but landowners were permitted to set out fire on these extensive tracts of land, and even they were restricted to a few weeks

in the year and required to give notice to adjacent proprietors. To put out fire under the then existing conditions was attended with great hazard, as fire once started on a large area covered with inflammable growth could not easily be controlled and might spread for miles, leaving ruin and destruction in its path. So, in framing this legislation, the General Assembly made penal the act of burning over one's own premises, irrespective of whether any injury was caused by the spreading of the fire, except during a certain season of the year and after giving notice to all landowners concerned. When the provisions of the act of 1847 were carried into the Code of 1861, the penal feature of it was eliminated, and a money penalty in the sum of five hundred dollars was substituted, to be sued for by an informer, one half of the recovery to be paid to him and the other to go to the educational fund of the county. By an act passed in 1879, the provision for the recovery of this money penalty was repealed, and a misdemeanor punishment prescibed in lieu thereof. Acts of 1878–9, p. 63.

Looking to the history of this legislation and to the conditions existing at the time of its adoption, it is evident that the General Assembly never intended to prohibit the burning of rubbish on lands in cultivation, of limited area, during any season of the year when it became necessary, in the usual course of husbandry, to prepare the land for the planting of crops or for pasturage, or for other purposes incident to ordinary farming operations. It is well known that the use of fire in burning off brush, briers, weeds, stubble, or other worthless growth upon arable lands, is a customary agricultural process, not attended with any great degree of danger to adjoining property, as the fire may ordinarily be kept under control and confined to a limited area. In the fall of the year, after crops have been gathered, the provident husbandman begins his preparations for another year's crops. In preparing his lands for the plow, it may be necessary to pile up logs and brush, dig up stumps, cut down hedgerows or briers along ditches, and then burn the debris in order to get rid of it. Such a course on the part of our farming class is very common; and yet one could hardly be found who would declare that to so conduct the operations of the farm constituted an indictable offense, except when done between February 20th and the 1st of April, after giving due

notice to adjacent landowners.    The construction we have given to sections 229–231 of the Penal Code not only seems reasonable, but was evidently deemed the proper construction by the legislature; for we find in the Penal Code of 1816, which contains the first codification of the criminal laws of Georgia, a provision declaring it to be a misdemeanor for one to wilfully and maliciously set on fire, or cause to be set on fire, any woods, lands, or marshes within this State, so as to thereby occasion loss, damage, or injury to any other person.    This provision, in substantially the same verbiage, was carried into all of the successive codes, and may now be found in our present Penal Code, § 698.    By an act passed in 1898, this section was so amended as to include negligent and careless firing, as well as willful and malicious.    Acts of 1898, p. 60.    Thus it will be seen that sections 229 et seq. of the Penal Code were intended to have application only in those sections of the State where there were large areas of wooded land, extensive marshes, or other wild lands.    The purpose of the legislation was to guard against disastrous conflagrations which might be innocently caused by an imprudent landowner.    The liability of the spread of the fire beyond his control very probably constrained the legislature to limit the time of firing of such lands to a short period in the year, and only after notice to his neighbors.    But where the land was given over to cultivation and the fire was started by the occupant for the purpose of burning up the rubbish on his land so as to start a crop, and where the extent of the fire was not likely to be great even if it got beyond control through some sudden and unexpected emergency, the statutory inhibition was not intended to apply.    Section 698 of the Penal Code, as amended, affords ample protection not only against wilful and malicious setting out of fire, but also against careless or negligent firing of lands, where damage occurs to an adjacent landowner. In California similar legislation was passed, and the courts placed upon it a like construction, looking to the evil it was intended to guard against.    Garnier *v.* Porter, 90 Cal. 105.    In other States of the Union, where there were large areas of woodland, marsh, or prairies, the policy has been to limit the time for setting out fires and to prescribe for due notice to landed proprietors likely to be affected by a spread of the flames.    See 13 Am. & Eng. Enc. L. (2d ed.) 429 et seq., and cases cited.    Statutes passed in pursuance

of this policy of guarding against destructive forest or prairie fires are not aimed at the husbandman who carries on his usual and proper agricultural pursuits, using fire as an agency to clear his premises of rank growth which must be removed at different seasons of the year in order to prepare the soil for planting or to furnish grazing for his stock. We therefore conclude that the facts appearing in the record did not authorize the conviction of the plaintiff in error.

*Judgment reversed. All the Justices concur.*