### 47029. INTERNATIONAL MINERALS & CHEMICAL CORPORATION v. BLEDSOE.

CLARK, Judge. This case presents for determination whether the 1941 Act captioned "Standards for Weights and Measures Established" placing jurisdiction in the Commissioner of Agriculture which appears in the annotated Code as § 112-107 through § 112-115 repealed by implication the five preceding Code sections numbering from § 112-102 through § 112-106 which impose similar duties upon the ordinary over weights and measures.

This action was commenced by appellant filing a complaint against defendant for a balance allegedly due on a promissory note which represented indebtedness for fertilizer purchased by defendant from plaintiff. Defendant's answer counterclaimed for sums paid on the obligation. This alleged overpayment was based on seller's failure to comply with the provisions of *Code* § 112-103. This Code section provides that whenever there is a failure of a person "engaged in selling by weights and measures" to apply to the ordinaries in their respective counties to have their weights and measures marked with the "marking instrument, seal or stamp" provided for in *Code* § 112-102 such seller "shall not collect more than three-fourths of any account, note, or other writing, the consideration of which is any commodity sold by their weights and measures." Both parties made motions for summary judgment in their favor. The trial court denied

the plaintiff's motion and granted the defendant's motion for recovery of the alleged overpayment.

To ascertain legislative intent we are constrained to look to the history of the legislation in reference to the subject matter of the particular statute. *Mayor &c. of Savannah v. Hartridge,* 8 Ga. 23 (2); *Acree v. State,* 122 Ga. 144 (50 SE 180).

Because the Code sections which give the ordinary jurisdiction stem from the first statute on this subject we begin with the Acts of 1803. There on pages 23 and 24 we find four exquisitely worded paragraphs encapsulated under the caption "An Act to regulate Weights and Measures in this State." It provided that until Congress acted that "the fixed Standard of Weights and Measures within this State" would be such as are established and used "by the corporation of the cities of Savannah and Augusta," which standards the Justices of the Inferior Courts[1] were to obtain with county funds, for a penalty upon short-weight sellers to be a forfeiture equal to three times the value of the article with one-half going to informers, for the Justices of the Inferior Courts to procure "a marking instrument, seal or stamp,"[2] and a fee of 6¼¢ to the Clerk of the Inferior Courts for each weight or measure.

In 1839 the legislature amended the 1803 statute. Ga. L. 1839, pp. 224, 225. This amending statute adopted the standards of weights and measures which had been

---

[1]"Justices of the Inferior Courts" were created by Article 3, Section 4, of the Constitution of 1798 with Section 6 granting them "the powers of a court of ordinary or register of probates." It was not until 1851 that all duties of the justices of the Inferior Court were transferred to the re-created position of Judge of the Court of Ordinary and Ordinary. See Chapter 1 of "Handbook for Ordinaries of Georgia" by Victor B. Jenkins, Jr.

[2]The quoted words were repeated without change in the Act of 1839 and again in the Codes of 1863, 1868, 1873, 1882, 1895, 1910, and now in § 112-102 of the Code of 1933.

promulgated[3] by the Congress of the United States and provided "it shall be the duty of His Excellency the Governor to cause to be procured in some cheap and economical way 100 standards of each to correspond in weights and measures with those now in the Executive Office in Millegeville." These standards were to be kept in the clerk's office of the Inferior Courts. "Violators were to be subject to all of the pains and penalties, both civil and criminal," of the Penal Code.

When Georgia's first Code[4] was adopted there was placed therein under the title of "Weights and Measures," a Chapter consisting of five sections (Sections 1527 through 1531) which restated the applicable portions of the 1803 and 1839 Acts, excepting a substitution of "Confederate States." Thereafter, with the exception of using "Ordinary" in lieu of "the Justices of the Inferior Courts" and reverting to "United States" the same sections appeared in the Codes of 1868, 1873, 1882, 1895, 1910 and 1933 in substantially the same language as is now codified as Sections 112-102 through 112-106, excepting Section 112-103.

---

[3]This was apparently done by a joint resolution of Congress approved June 14, 1836, as that date appears in our 1941 Statute on Weights and Measures now codified as §§ 112-107 through 112-115.

[4]A young Savannah lawyer then 28 years old, George A. Gordon was the progenitor of our Code of 1863 actually adopted in 1860, he having introduced the legislation for a codification "which should, as near as practicable embrace, in a condensed form, the laws of Georgia, whether derived from the common law, the constitutions, the statutes of the State, the decisions of the Supreme Court of the statutes of England of force in the State." Ga. L. 1858, p. 95. See "The History of the First Georgia Code" by Richard H. Clark, 8 Ga. Bar Assn. Reports 144 (1890) and "The Preparation and Adoption of the Code of 1863" by Bond Almand, 14 Ga. Bar Jour. 161.

As this is the Code section which provides the penalty serving as the basis for the trial court's decision, we note it likewise had its origin in the 1803 Act. As previously shown, this Act was amended by the 1839 Act and subsequently the material in the two statutes was placed in our Code. Until 1893 the penalty was a forfeiture of the entire debt. Apparently influenced by the 1891 decision rendered in *Finch v. Barclay*, 87 Ga. 393 (13 SE 566) upholding such total forfeiture, there was passed in the Acts of 1893 (Ga. L. 1893, p. 31), an amendment to Section 1589 of the 1882 Code so that the non-complying seller could recover only three-fourths of the obligation.

Thus, we note that until 1941, our law on this subject was simply a codification of the 1803 Act as amended in 1839 and 1893.

Then under the caption "Standards for Weights and Measures Established" the General Assembly enacted in 1941 the broad legislation on this subject found in Ga. L. 1941, pp. 510-515. Although there was no express repeal of the existing law, a reading thereof clearly shows the legislative intent to be a complete coverage of the entire subject of "weights and measures." This is demonstrated by the title, without quoting specific sections, reading as follows:

"An Act To establish State standards of weights and measures: to provide for the receipt of primary standards of both weight and measure from the U. S. Bureau of Standards, to be known as State Standards: to define the powers and duties of the Commissioner of Agriculture, his Deputies or Inspectors, relative to weights and measures: to provide for weighing various commodities from time to time: to provide for specifications and tolerances: to provide for testing and inspecting weighing and measuring equipment: to fix penalties for violation of the Act and for other purposes: to regulate the sale of liquid and solid commodities and to provide for the approval and condemnation of weights, measures, and weighing and measuring devices: to provide protection against the de-

facing or removing of seals or tags placed on weights, measures and weighing and measuring devices by those in authority."

We recognize that repeals by implication are not favored (*Adcock v. State,* 60 Ga. App. 207, 208 (3 SE2d 597)) but where it plainly appears to have been the purpose of the legislature to give expression in a statute to the whole law on the subject as is done here with weights and measures, it is necessary for us to hold that the 1803, 1839 and 1893 Acts that presently appear as *Code* § 112-102 through § 112-106, both inclusive, were repealed by implication.[5]

"Where a later or revising statute clearly covers the whole subject-matter of an antecedent Act, and it plainly appears to have been the purpose of the legislature to give expression in it to the whole law on the subject, the antecedent Act is repealed by necessary implication. [Citations]." *Leonard v. State of Ga.,* 204 Ga. 465 (2) (50 SE2d 212). In accord are *Mosley v. Lanier,* 213 Ga. 373 (99 SE2d 118) and *Hardy v. State,* 25 Ga. App. 287 (103 SE 267). For an analogous situation where this court likewise found it necessary to make a historical study of the statutes to reach a similar conclusion of repeal by implication see *Thompson v. Ga. Power Co.,* 73 Ga. App. 587 (37 SE2d 622).

Appellee points out that *Code Ann.* § 112-109 contains the phrase "when not otherwise provided by law" and avers this indicates the intention of the legislature to retain the weighing statutes including those which we have declared to have been repealed by implication. He cites *Hines v. Wingo,* 120 Ga. App. 614 (171 SE2d 905); *Bragg v. Bragg,* 225 Ga. 494 (170 SE2d 29); *Adams v. Cowart,*

---

[5]The late Victor B. Jenkins, Jr., who served so well as Chatham County Ordinary that he was selected by the Georgia Institute of Law and Government to prepare the authoritative "Handbook for Ordinaries in Georgia" reached the same conclusion. See Section 258, pp. 273, 274.

224 Ga. 210 (160 SE2d 805). We regard those cases as being different from the case at bar, particularly since the quoted words "when not otherwise provided by law" dealt only with one portion of the statute which in its entirety was obviously aimed at encompassing all of the Georgia law on "standards for weights and measures."

Appellee further argues there has been a recent expression by the General Assembly, which being an enactment after 1941, shows the legislative intent to preserve the ordinary's function in this area of weights and measures despite the 1941 comprehensive legislation which placed all of the jurisdiction in this field in the State Commissioner of Agriculture. This reference is to the 1971 statute which revised the entire schedule of fees chargeable by the ordinary. This itemization covers eight pages in the Supplement to Book 9 of the Annotated Code. The statute expressly dealt only with fees and struck *Code* § 24-1716 in its entirety with a substitution of this new schedule. Under the heading of "Miscellaneous" among 51 items there listed we find the entry of 15¢ each "For comparing and testing weights and measures and stamping and marking." It will be noted that on each occasion of establishing fees for ordinaries the General Assembly repeated the items contained in previous schedules. The inclusion of obsolete items such as "For services in his action upon the roster of each company of State troops in Civil War, where no objections filed" and "For issuing license to one engaged in business of lending money on household goods, etc." cannot be construed as indicating the intention of the legislature to retain archaic and obsolete laws. Such fee revision list cannot be construed to revive the statutes of 1803, 1839, and 1893 that were repealed by implication through the all-encompassing legislative act of 1941. "A cardinal rule of construction is that the legislative intent shall be effectuated, even though some verbiage may have to be eliminated. The legislative intent will prevail over the literal import of the words. [Citations]." *Carroll v. Ragsdale,* 192 Ga. 118,

120 (15 SE2d 210).

As the defense based upon a repealed statute fails, we reverse and hold that the motion for summary judgment by plaintiff should have been sustained and that the defendant's motion should be denied.

*Judgment reversed. Eberhardt, P. J., and Deen, J., concur.*
SUBMITTED APRIL 5, 1972—DECIDED APRIL 25, 1972—
REHEARING DENIED MAY 9, 1972—

*Walker & Richardson, Lawrence C. Walker, Jr.,* for appellant.

*Davis & Gregory, Hardy Gregory, Jr.,* for appellee.