S93A0976, S93A0977. GEORGIA MENTAL HEALTH INSTITUTE et al. v. BRADY (two cases).

(436 SE2d 219)

SEARS-COLLINS, Justice.

The appellants in both these appeals are the Georgia Mental Health Institute (hereinafter "GMHI") and the Georgia Department of Human Resources (hereinafter "DHR"). GMHI sought to have the appellee, Lorraine Brady, involuntarily committed for inpatient treatment at its facility. OCGA § 37-3-22. The probate court heard GMHI's petition, determined that Brady did not meet the requirements for involuntary commitment, and accordingly ordered GMHI to discharge Brady immediately. See § 37-3-81.1 (a) (1). GMHI appealed to superior court under OCGA §§ 5-3-2 and 5-3-3, which generally govern appeals from probate court to superior court. Moreover, GMHI refused to release Brady pending the appeal to superior court, contending that its notice of appeal stayed the probate court's order of immediate discharge and permitted GMHI to hold Brady until GMHI exhausted the appellate process. Brady then filed this petition for writ of habeas corpus and injunctive relief in superior court. She relied on OCGA § 37-3-150 to contend that GMHI did not have the right to appeal. That Code section specifies that the patient shall have the right to appeal from any decision of a probate court under Title 37, Chap. 3; it does not specify that a mental health facility has a right to appeal, but neither does it specify that the facility does not have such a right.[1] Brady contended that the exclusion of mental health facilities from the persons entitled to appeal under § 37-3-150 precludes those facilities from appealing. Brady also contended that, even if GMHI had the right to appeal, it did not have the right to restrain her pending the appeal. The superior court held that GMHI did not have the right to appeal, granted Brady's writ of habeas corpus, and ordered GMHI to release Brady. The court subsequently granted Brady $600 in attorney fees. In Case No. S93A0976, GMHI

---

[1] In relevant part, § 37-3-150 provides that

[t]he patient, his representatives, or his attorney may appeal any order of the probate court . . . rendered in a proceeding under this chapter to the superior court of the county in which the proceeding was held . . . . The appeal to the superior court shall be made in the same manner as appeals from the probate court to the superior court, except that the appeal shall be heard before the court sitting without a jury as soon as practicable but not later than 30 days following the date on which the appeal is filed with the clerk of superior court.

appeals from the order granting Brady habeas corpus and injunctive relief. In Case No. S93A0977, GMHI appeals from the award of attorney fees. We affirm the superior court in Case No. S93A0976 and reverse in Case No. S93A0977.

1. In Case No. S93A0976, GMHI contends that Brady was not entitled to habeas corpus and injunctive relief, first, because, contrary to the superior court's ruling, GMHI did have the right to appeal under §§ 5-3-2 and 5-3-3, and, second, because GMHI's notice of appeal entitled it to detain Brady pending the appeal pursuant to supersedeas under OCGA § 5-6-7.

2. We first address the issue of the right to appeal and begin with the proposition that a specific statute governs over a more general statute where they are in conflict. *First Nat. Bank v. Sinkler*, 170 Ga. App. 668, 670 (1) (317 SE2d 897) (1984). Section 37-3-150 is the more specific statute, as it focuses on appeals of probate court rulings under Chapter 3 of Title 37. Moreover, we conclude that it conflicts with the general appeal provisions of §§ 5-3-2 and 5-3-3, and therefore controls.

(a) In reaching this conclusion, we find several rules of statutory construction useful. The first is that, in ascertaining the purpose of legislation, courts may look to the history of the legislation on the subject matter of the particular statute. *International Minerals &c. Corp. v. Bledsoe*, 126 Ga. App. 243, 244 (190 SE2d 572) (1972). We conclude that the relevant statutory history provides firm support for the conclusion that the General Assembly made a decision in 1969, to which it has since adhered, to deny persons who seek the involuntary hospitalization of an allegedly mentally ill individual ("applicants for commitment") the right to appeal an adverse decision of the probate court.

Several considerations support this conclusion. Most persuasive is that for many years before 1969 the General Assembly had specifically provided a right to appeal to applicants for commitment, as in the comprehensive and exhaustive mental health reforms of 1964, see Ga. L. 1964, pp. 499, 536-537; former Code Ann. § 88-506,[2] yet entirely deleted that specific right in the equally comprehensive and ex-

---

[2] For provisions before 1964, see, e.g., Code of 1895, §§ 2573 and 2575; Code of 1933, §§ 49-604 and 49-606, in which the General Assembly provided a procedure in the Code sections on guardianships for the commitment of the mentally ill by the probate court (then the Court of Ordinary) and a right of appeal to superior court from a probate court ruling on commitment by either the patient or the applicant for commitment.

The 1964 Act set forth a new Chapter 88-5, which provided comprehensive and exhaustive reforms to the procedures governing the hospitalization and treatment of the mentally ill, see Ga. L. 1964, pp. 499, 530-546, and which repealed §§ 49-604 and 49-606 of the 1933 Code and enacted new sections 49-604 and 49-606 to harmonize them with the new Title 88-5, Ga. L. 1964 at 658-661.

haustive mental health reforms of 1969 while continuing to provide a right of appeal to the patient, Ga. L. 1969, pp. 505, 516; former Code Ann. § 88-502.16.[3] Moreover, the fact that the appeal Code section in the 1969 Act appeared, for the first time, under a new heading entitled "Rights of Patients," is significant in two respects. First, it demonstrates that the General Assembly intended the right to appeal to be a right special to patients only and not one to be afforded to facilities. This conclusion is borne out by the fact that the other rights listed under the "Rights of Patients" heading are rights unique to patients. E.g., the right to education of a patient who is a child, former Code Ann. § 88-502.9, Ga. L. 1969 at 512; patient's right to vote, former Code Ann. § 88-502.7, Ga. L. 1969 at 511. Second, it demonstrates that the exclusion of applicants for commitment was not inadvertent; the General Assembly consciously had to delete them from the list of persons having a right of appeal under that Code section, as the rights of applicants for commitment have no place in a "patients rights" Code section. That the General Assembly did not shift the previously provided right of appeal for applicants for commitment to any other section of the mental health code is further evidence that the General Assembly did not intend for applicants to have that right, as this omission occurred in a comprehensive and exhaustive reform of the rules governing the parties entitled to participate in proceedings concerning the hospitalization and treatment of the mentally ill and their rights and duties therein. It would be unreasonable to conclude that the General Assembly, as part of those comprehensive and exhaustive reforms, did not intend for the appeal rights of applicants for commitment to be governed by those comprehensive provisions but by the general appeal statutes, especially considering that for so long before 1969 the General Assembly had specified that applicants had the right to appeal.

These considerations lead inescapably to the conclusion that the legislature has expressed its will that § 37-3-150 exclusively governs the right to appeal commitment decisions of a probate court and that only patients have the right to appeal such decisions.

(b) Further cementing this conclusion is the rule of statutory construction that any proposed construction of a statute must not result in unreasonable consequences and must square with common sense and sound reasoning. *State v. Mulkey*, 252 Ga. 201, 204 (312 SE2d 601) (1984). We find that an unreasonable result will obtain if

---

[3] In 1969, the General Assembly struck Chapter 88-5 of Ga. L. 1964, p. 499, and enacted a new Chapter 88-5, see Ga. L. 1969, pp. 505-545. Although the 1969 appeal statute has been amended since 1969, those amendments have maintained the deletion of the applicant for commitment as a person entitled to appeal and are otherwise not relevant to the present issue. See Ga. L. 1978, pp. 1789, 1805-1806; former Code Ann. § 88-502.19.

GMHI has the right to appeal under § 5-3-2. Under § 37-3-150, a patient's appeal must be heard in superior court within 30 days, and, to facilitate this expedited review, the patient is denied the valuable right to a jury trial. In contrast, in a facility's appeal under § 5-3-2, there would be no requirement for expedited review, subjecting the patient to the strain, stigma, and expense of the mental health proceeding for an extended period of time, and the facility would be entitled to a valuable right denied to patients under § 37-3-150 — the right to a trial by jury. This contrasting treatment on appeal is unreasonable and illogical.

(c) For the foregoing reasons, we conclude that the General Assembly must have intended § 37-3-150 to exclusively control the parties who have a right to appeal from a commitment decision and for mental health facilities not to have that right.[4] We acknowledge that if a patient appealed an adverse probate court ruling to superior court and the superior court ruled the patient was not committable, a facility could appeal the superior court decision to this Court or the Court of Appeals. We do not, however, agree with the dissent's assertion that this result is inconsistent with our present holding. Significantly, in a facility's appeal to this Court or the Court of Appeals neither court may try the issue of the patient's commitment; we may only reverse the appeal based on an error appearing on the record. On the other hand, if a facility were permitted to appeal a probate court decision that a patient is not committable, the facility would be obtaining two bites at the commitment apple, as the appeal to superior court would be de novo. Because of the conflicting nature of the appeal rights, the legislature may reasonably have decided to deny a facility an appeal in the former case but to permit an appeal in the latter case.

3. Although our holding in Div. 2 precludes a facility such as GMHI from appealing an adverse probate court decision on commitment and thus leads to an affirmance of the trial court's grant of habeas corpus and injunctive relief to Brady, we nevertheless address GMHI's contention that it had the right to restrain Brady pending the appeal because its notice of appeal stayed the probate court's or-

---

[4] We note that this decision concerns only the right to appeal commitment decisions of a probate court and would not impact a facility's right to appeal an adverse decision on any action a patient might bring, for instance, for declaratory judgment, for a writ of mandamus, for a writ of habeas corpus, or for injunctive relief, seeking a determination concerning his or her rights or privileges or concerning any alleged abuses by a facility. See OCGA § 37-3-148, which specifies that patients have the right to bring such actions. Those types of proceedings would not be "proceeding[s] under [Chapter 3 of Title 37]," § 37-3-150, as, given the historical context of the appeal statute, we construe "proceedings under [Chapter 3 of Title 37]" to refer to the probate court proceedings detailed in Chapter 3 of Title 37 that led to the court's decision on the involuntary hospitalization and treatment of a patient.

der of immediate discharge pursuant to OCGA § 5-3-7. We do so because the parties to the appeal have briefed the issue and because the issue presents a significant question of individual liberty. For several reasons, we conclude that GMHI did not have the right to involuntarily confine Brady.

(a) First, because GMHI's petition for involuntary commitment only authorized it to detain Brady "pending completion of a full and fair hearing," OCGA § 37-3-81 (a), in probate court, and because the probate court did not order some form of treatment for Brady, e.g., § 37-3-81.1 (c), but instead ordered Brady's immediate discharge, § 37-3-81.1 (a) (1), GMHI's statutory authority to hold Brady against her will terminated at the end of the hearing. Moreover, as a notice of appeal merely acts to stay a judgment, GMHI's notice of appeal could not stay the statutory termination date of GMHI's detention authority. GMHI thus had no right to detain Brady following the hearing.

(b) Moreover, we conclude it would be unconstitutional for a facility to detain a patient pending an appeal of a probate court order of discharge. The Supreme Court has held that a civil commitment constitutes a " 'massive curtailment of liberty,' " (citation omitted) *Vitek v. Jones*, 445 U. S. 480, 491 (100 SC 1254, 63 LE2d 552) (1980), and that a state may not constitutionally confine mentally ill persons "involuntarily if they are dangerous to no one and can live safely in freedom," *O'Conner v. Donaldson*, 422 U. S. 563, 575 (95 SC 2486, 45 LE2d 396) (1975). When a probate court orders an immediate discharge under § 37-3-81.1, it has determined that the patient did not pose a substantial threat of imminent harm to herself or others and was not so unable to care for herself as to create a life-threatening crisis. E.g., OCGA § 37-3-1 (9.1). To permit a facility to continue to confine a patient after such a judicial finding would violate the patient's right to due process. *O'Conner*, supra, 422 U. S. at 575.

4. For the reasons given in Divs. 2 and 3, supra, we affirm the superior court's grant of habeas corpus and injunctive relief to Brady in Case No. S93A0976.

5. We now turn to Case No. S93A0977, in which GMHI appeals from the superior court's award of $600 in attorney fees to Brady. GMHI contends that the award is not authorized under OCGA § 9-15-14; § 13-6-11, or § 37-3-122, which governs the payment of expenses, including attorney fees, in connection with hearings under Chapter 3 of Title 37. We agree and reverse.

First, we find no evidence that would authorize an award under the standards of § 13-6-11 or § 9-15-14. Moreover, we conclude that § 37-3-122 is inapplicable. That Code section only authorizes an award against an appropriate county but not against a facility or DHR. For these reasons, we reverse the award of attorney fees.

*Case No. S93A0976. Judgment affirmed. All the Justices concur,*

*except Hunt, P. J., Hunstein and Carley, JJ., who dissent.*
*Case No. S93A0977. Judgment reversed. All the Justices concur.*

HUNT, Presiding Justice, dissenting.

The majority begins its analysis of this case by concluding that OCGA § 37-3-150 conflicts with OCGA §§ 5-3-2 and 5-3-3, but such a conclusion is unnecessary. It is an established rule of statutory construction that statutes in pari materia are to be construed together and harmonized, *Ga. Marble Co. v. Whitlock*, 260 Ga. 350, 354 (392 SE2d 881) (1990), and these statutes, which all deal with appeals from the probate courts, may be so construed and harmonized.

In 1969, the legislature deleted applicants for commitment (here, GMHI) from the list in new Chapter 88-5 of persons having the right to appeal; at this time, the Code section appeared under a new heading entitled "Rights of Patients." It is quite logical that applicants for commitment should have been deleted from this section since, as the majority points out, the rights of applicants for commitment have no place in a "patients rights" Code section. In other words, it appears quite possible, if not probable, that the legislature deleted applicants for commitment from the list, not because it intended to take from them the right of appeal, but because it makes no sense to include them in a Code section entitled "Rights of Patients." There was, in addition, no need for the legislature to shift this right of appeal to another Code section because the right of appeal existed already in the provisions of OCGA § 5-3-2 et seq., Code sections which this Court has held apply to all cases. *Hobbs v. Cody*, 45 Ga. 478 (1872).

Our conclusion is supported by the rule of statutory construction that any proposed construction of a statute must not result in unreasonable consequences and must square with common sense and sound reasoning. Implicit in the majority opinion is the holding that even though the state has the right to appeal decisions of the superior court in commitment cases,[5] it does not, as does the patient, have a right to appeal a decision of the probate court in such cases. The logic for such a holding is elusive. It makes little sense for the legislature to give with one hand to the patient a protection from the state and then to take back with the other hand this protection; one would think that if the legislature had removed applicants for commitment from the list of those who could appeal because it was concerned about patients' rights, that same concern for the patient would mani-

---

[5] See OCGA § 5-6-33. According to the majority opinion, if the patient prevails in the probate court, there is no appeal available to the state. On the other hand, if the patient loses in the probate court, she may appeal de novo to superior court and if she wins in superior court, the state *can* appeal. Thus, if commitment is denied by the probate court, the state cannot appeal; but if commitment is denied by the superior court, the state can appeal. What legislative purpose is served by this state of affairs?

fest itself on the superior court level. Beyond this, an interpretation which has the legislature granting to one side a legal right which it withholds from the other betrays on its face a constitutional infirmity.[6] Rather than trying to get around this infirmity by assuming that the legislature intended to take from the state the right of appeal, we can construe these statutes so that they work in harmony as part of a single, logical system of appellate review.

Accordingly, I respectfully dissent to the majority's holding that the Georgia Mental Health Institute does not have the right to appeal under OCGA §§ 5-3-2 and 5-3-3.

I am authorized to state that Justice Hunstein and Justice Carley join in this dissent.

DECIDED NOVEMBER 8, 1993 —
RECONSIDERATION DENIED DECEMBER 2, 1993.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Patricia Downing, Assistant Attorney General, Davis & Davis, Jefferson J. Davis,* for appellants.
*Karen S. Byers,* for appellee.

---

[6] Those few cases (none from Georgia) which address this issue insist that the right to appeal must be reciprocal to prevent a lack of due process. See, for example, *Caddell v. Fiscal Court of Whitley County,* 79 SW2d 407; *Illinois Liquor Control Comm. v. Chicago's Last Liquor Store,* 88 NE2d 15; 4 CJS, § 168. We acknowledge that the legislature may deny the state a right of appeal which it gives to individuals, but, absent an *express* denial of the state's right to appeal, we need not and should not conclude that the legislature intended to withhold the right of appeal from the state.