**In re Timothy Hubert CHAPPELL and Brandie L. Chappell, Debtors.**

**Bankruptcy No. 98–10171–JDW.**

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

Aug. 17, 1998.

George W. Woodall, Albany, GA, for Debtors.

D. Bradley Folsom, Garner, Willis, Sweat & Goldsmith, LLP, Albany, GA, for Creditor.

Kristin Smith, Columbus, GA, Chapter 13 Trustee.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Objection to Confirmation by Minute Man Finance Co., Inc., d/b/a Leesburg Finance ("Minute Man"). Timothy Hubert Chappell and Brandie L. Chappell (collectively, "Debtors") filed a Chapter 13 plan which proposes to treat Minute Man as an unsecured creditor. Minute Man objects to confirmation of this plan on the grounds that it should be treated as secured and that, because of alleged conversion of its collateral on the part of Debtors, the plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, evidence presented and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

On October 3, 1997, Debtors executed a promissory note in the amount of $959.53 in favor of Minute Man secured by a 1966 Chevrolet pickup truck, Vehicle Identification Number C1456B142094. The principal amount of this loan was comprised mainly of the balance due on a previous loan plus $331.21 in new money advanced to Debtors. Minute Man had previously filed a UCC-1

Financing Statement Numbered 88–1996–187 on March 19, 1996, at 9:30 a.m. in the Lee County Superior Court Clerk's Office as a means of noticing its security interest in the vehicle. At some point after this UCC–1 filing and before the commencement of Debtors' bankruptcy case, the 1966 Chevrolet pickup truck was traded-in, without the knowledge of Minute Man, to purchase a 1967 Ford pickup truck.

Debtors filed this Chapter 13 case on February 4, 1998. Minute Man filed a proof of claim alleging secured status. Debtors' Chapter 13 Plan proposes to treat Minute Man as an unsecured creditor based upon the contention that the security interest was not properly perfected. Accordingly, on March 10, 1998, Minute Man filed the Objection To Confirmation which is the subject matter of this Memorandum Opinion.

Minute Man alleges that it should be treated as a secured creditor in the Chapter 13 Plan as it properly perfected its security interest in the 1966 Chevrolet pickup truck by filing a UCC–1 Financing Statement. If the security interest was properly perfected, the next logical step would be to consider whether Minute Man's perfected status should continue in the 1967 Ford pickup truck as proceeds of the 1966 Chevrolet pickup truck.[1] Alternatively, Minute Man contends that Debtors' action of trading-in the Chevrolet pickup truck amounts to a conversion of collateral, and that, as a result, confirmation should be denied on the grounds that the plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3).

Debtors argue that Minute Man did not properly perfect its security interest in the 1966 Chevrolet pickup truck as Georgia law states that security interests in vehicles can only be perfected through compliance with the relevant provisions of the Georgia Title Act. Therefore, Debtors contend, Minute Man's filing of a UCC–1 Financing Statement was not sufficient to perfect its security interest in the 1966 Chevrolet pickup truck, and it is proper to treat Minute Man as unsecured through the plan.[2]

### Conclusions of Law

Minute Man argues that it properly perfected its security interest, and, in the alternative, that Debtors engaged in conversion of its collateral by trading-in the 1966 Chevrolet pickup truck in the acquisition of the 1967 Ford pickup truck without notifying Minute Man. For the reasons stated below in this Memorandum Opinion, the Court holds that Minute Man properly perfected its security interest in the 1966 Chevrolet pickup. In addition, the Court holds that Minute Man's security interest extends to proceeds which, here, are represented by the 1967 Ford pickup truck. Therefore, Minute Man's Objection To Confirmation will be sustained.

### I.  Unsecured Status Objection

In Georgia, it is not necessary to obtain a certificate of title for vehicles which are fifteen or more model years old. O.C.G.A. § 40–3–4(14). Both pickup trucks previously mentioned fall within this exception. Thus, the exact issue to be decided is whether a creditor can properly perfect a security interest in a vehicle for which no certificate of title is required by filing a UCC–1 Financing Statement rather than recording notice of the lien in accordance with the provisions of the Georgia Title Act.

Georgia cases, both cited by Debtors and discovered in the course of the Court's own research, consistently hold that security interests in vehicles can only be perfected through compliance with the provisions of the Title Act. A study of these cases reveals that they are rooted in *Maley v. National Acceptance Co.*, 250 F.Supp. 841 (N.D.Ga. 1966). *Each case which has addressed the issue before the Court in the wake of *Maley* has, for all practical purposes, adopted its*

---

1. While this logical step in the argument was not put before the Court, the Court will consider it impliedly made, and, therefore, give it due consideration, since it is necessary in reaching the conclusion Minute Man seeks.

2. Creditors holding unperfected security interests in a debtor's collateral are treated as unsecured creditors in bankruptcy since their rights will be subordinate to the trustee who enjoys the rights of a hypothetical lien creditor under the authority of 11 U.S.C. § 544(a)(1).

holding without much elaboration.[3] In ordinary circumstances, the Court would see no fault with this practice. However, since the rendering of *Maley*, the statutes governing the issue now being discussed have changed dramatically. In fact, the changes have been significant enough to bring into question the continued validity of the *Maley* holding. Given the apparent blind reliance upon *Maley* by subsequent cases, neither are they useful precedent. Therefore, this Court will explore the issue anew.

### A. Historical Overview

At the time *Maley* was decided, the Uniform Commercial Code ("UCC") and the Title Act had been recently incorporated into Georgia statutes. From that time to the present, the law regarding security interests in personal property has generally been governed by Article 9 of the Georgia UCC. *See* O.C.G.A. § 109–9–102. However, Article 9 has also specifically excluded from its reach security interests in certain types of collateral. The *Maley* decision focused on some of this exclusionary language in support of its holding.

At the time the *Maley* opinion was handed down, the relevant exclusionary provision of the Georgia UCC stated that the filing provisions of Article 9 did not govern

> a security interest in property subject to a statute ... of this State which provides for central filing of, or requires indication on a certificate of title of, such security interests in such property.

Ga.Code Ann. § 109A–9–302(3)(b) (1966). Also, at that time, the Georgia Title Act provided that "All 1963 model vehicles and all successive model vehicles thereafter shall have a certificate of title: Provided, that by January 1969, all model vehicles shall have a certificate of title." Ga.Code. Ann. § 68–

406a(a) (1966). Considering these and other provisions, the court held that the law regarding security interests in *all* vehicles must be governed by the Title Act, not the Georgia UCC. *See Maley*, 250 F.Supp. at 844 ("Although a title certificate is not required of all pre–1963 motor vehicles until 1969 (§ 68–406a(a)), the provisions of the Title Act as to filing a security interest in such vehicles do apply."). In reaching this conclusion, the court relied upon the apparent purposes of the Georgia UCC and the Title Act, and, accordingly, stating the following:

> That a security interest in all motor vehicles (including pre–1963 models for which no Title Certificate is required until 1969) must be filed pursuant to the Georgia Title Act is the only result consistent with the announced purposes of the Commercial Code to provide a simple, clear, and modern law of commercial transactions, and the purpose of the Title Certificate Act to provide for a centralized titling of motor vehicles. To hold otherwise would be to institute a confusing system of filing under which one could not be sure exactly where security interests were to be filed.

*Id.* Given that, at the time of the *Maley* decision, it was believed that, by 1969, all vehicles would be required to have a certificate of title, the court's holding that security interests in all vehicles, even those not yet requiring a certificate of title were subject to the provisions of the Title Act had a solid foundation. First of all, even those vehicles not requiring a certificate of title were, at the very least, "subject to a statute" that required security interests to be indicated on a certificate of title in that section 68–406a(a) required that such vehicles must have a certificate of title by 1969. In addition, from a policy perspective, since all vehicles would ultimately be required to have a certificate of

---

**3.** For example, a year after *Maley* was decided, the Court of Appeals of Georgia adopted its holding without explanation by summarily concluding that "the only way to perfect a security in motor vehicles is by filing under the Motor Vehicle Certificate of Title Act." *Staley v. Phelan Fin. Corp. of Columbus*, 116 Ga.App. 1, 2, 156 S.E.2d 201, 202 (1967) (per curiam). Several years later, in an opinion citing *Staley*, it was similarly held, without elaboration, that "the only way to

perfect a security interest in any automobile since the enactment of the Uniform Commercial Code is by filing under the Motor Vehicle Certificate of Title Act." *Harper v. Avco Financial Servs., Inc.*, 124 Ga.App. 6, 7, 183 S.E.2d 89, 90 (1971). In the most recent case on point, the Georgia Court of Appeals, quoting *Harper*, reiterated the same holding, once again without further justification. *Freeman v. Bentley*, 205 Ga. App. 409, 410, 422 S.E.2d 435, 436 (1992).

title, it made the most sense to have perfection of all vehicles be governed by one set of rules, the Title Act, from the beginning.

This Court finds further support for the correctness of *Maley* court's holding in that court's discussion of the then-existing statutes regarding "previously registered vehicles." At the time *Maley* was decided, the Georgia Title Act stated the following:

Notice of a lien against or the creation of a security interest in a previously registered vehicle for which no certificate of title or application for certificate is required is perfected and given by delivery to the commissioner of a notice of security interest in or lien against the vehicle in such form as the commissioner may prescribe and the payment of the required fee.

Ga.Code Ann. § 68–438a (1966). Through this statute, the Georgia Title Act provided a method for perfecting a security interest in a vehicle which qualified as "a previously registered vehicle" which was defined as

a vehicle registered in this State when this Chapter took effect or a vehicle whose last registration before this Chapter takes effect was in this State, or a vehicle which is registered in this State and which is not required to have a certificate of title by section 68–406a, subsection (a).

*Id.* § 68–436a. As mentioned earlier, section 68–406a(a) stated that vehicles with a model year prior to 1963 did not require a certificate of title. Thus, such vehicles fell within the original definition of "previously registered vehicle." The *Maley* opinion stated the following with regards to this provision:

The Motor Vehicle Certificate of Title Act was effective as of July 1, 1962. [footnote omitted] It required that title be obtained for 1963 and subsequent model vehicles, but made optional the acquisition of title certificates for, and the filing of security interests on 1962 and prior model vehicles. At that time there was also in effect for these pre–1963 cars the pre-existing state law providing a general method of filing security interests. Thus, during the year of 1963, subsequent to the passage of the Motor Vehicle Title Act, but prior to the passage of the Commercial Code, there were what appear to be alternative methods of filing a security interest in a pre–1963 motor vehicle in Georgia. [footnote and citation omitted] Security interests in these pre–1963 vehicles, or "previously registered" vehicles under the terms of the Title Act for which no certificate of title is required, could be registered under § 68–438a, or the security interests could be filed under the general provisions of the prior law. It should be noted that the general filing provisions of the law prior to the Commercial Code did not provide for an exception from its filing requirements for those security interests subject to a central filing statute. On January 1, 1964, a year and six months after the effective date of the Title Act, the Uniform Commercial Code became effective in Georgia. [citation omitted] The Commercial Code repealed the prior Georgia law as to the filing of security interests in attempting to achieve its declared purpose "to simplify, clarify and modernize the law governing commercial transactions." [citation omitted] All laws or parts thereof in conflict with the Commercial Code were repealed. [citation omitted] Thus, at this time the "prior law" which had provided an alternative method of filing security interests in pre–1963 motor vehicles was replaced by the Commercial Code which specifically excludes those security interests which are subject to a Georgia statute which provides for their central filing.

*Maley,* 250 F.Supp. at 843. Thus, to the *Maley* court, it appears as though the language excluding from the Georgia UCC's grasp property subject to a central filing system was pivotal to its holding that security interests in all vehicles could only be perfected under the provisions of the Georgia Title Act.

This Court agrees with that court's conclusion based upon the state of the law *at that time.* However, many of the points of solid reasoning which existed then are no longer present today.

As stated earlier, the Georgia UCC formerly stated the following:

(3) The filing provisions of this Article do not apply to a security interest in property subject to a statute

. . .

(b) of this State which provides for central filing of, or requires indication on a certificate of title of, such security interests in such property.

Ga.Code Ann. § 109A–9–302(3)(b) (1966). Today, the statute whose roots can be traced to that provision states the following:

(3) The filing of a financing statement otherwise required by this article is not necessary or effective to perfect a security interest in property

. . .

(b) Required to have a certificate of title under Chapter 3 of [the Title Act] as now or hereafter amended, or subject to Code Section 40–3–50. . . . [4]

O.C.G.A. § 11–9–302(3)(b). The current statute is much more direct in that it no longer talks of property which is "subject to a statute. . . ." Instead, it plainly states that a UCC–1 Financing Statement is not valid for perfecting an interest in property "required to have a certificate of title."

As previously mentioned, at the time *Maley* was rendered, the relevant statute regarding whether a certificate of title was required stated the following:

All 1963 model vehicles and all successive model vehicles thereafter shall have a certificate of title: Provided, that by January 1, 1969, all model vehicles shall have a certificate of title.

Ga.Code Ann. § 68–406a(a) (1966). In 1967, the requirement that "by January 1, 1969, all model vehicles shall have a certificate of title" was repealed. Furthermore, in 1981, a new statute was promulgated, the current version of which states the following:

(A) No certificate of title shall be obtained for:

. . .

(14) A vehicle, other than a mobile home or crane, which is 15 or more model years old. For purposes of this subparagraph, a model year begins on September 1 of each year.

O.C.G.A. § 40–3–4(14). Since Article 9 of the Georgia UCC excludes from its provisions "vehicles requiring a certificate of title," and the Georgia Title Act states that vehicles "15 or more model years old" are not required to have a certificate of title, it follows that vehicles fitting that description are not excluded from the Georgia UCC provisions regarding security interests. However, the clarity of this seemingly logical conclusion has been clouded by other provisions of the Georgia Title Act.

One such provision tending to weigh against the conclusion above is O.C.G.A. § 40–3–4(14). Subparagraph (A) of that section contains the aforementioned "15 or more model years old exclusion" to the requirement for a certificate of title. The remaining portions of that section state the following:

(B) The owner of any vehicle which has a valid certificate of title and which becomes subject to the [15 or more model year old exclusion] may retain the certificate of title. Each subsequent transferee of any vehicle covered by [such exclusion], for which the certificate of title has been retained, may obtain a certificate of title by complying with Code Section 40–3–32. However, the failure of any subsequent transferee to comply with Code Section 40–3–32 shall preclude transferees subsequent to that transferee from obtaining a certificate of title. The Department of Revenue shall maintain such records as may be necessary to allow owners to obtain a certificate of title under this subparagraph. No certificate of title authorized to be issued under this subparagraph shall be issued under Code Section 40–3–28.

(C)(i) A security interest in or lien against a vehicle which is subject to the [15 or more model years old exclusion] and which is perfected on or before the date such vehicle becomes subject to the operation of [such exclusion] shall lapse unless a notice of such security interest or lien is filed with the commissioner within 30 days from the date such vehicle becomes subject to [such exclusion].

4. O.C.G.A. § 40–3–50 describes the procedures necessary to perfect a security interest in "a vehicle of the type for which a certificate of title is required." Therefore, it does not affect the Court's reasoning.

(ii) A security interest in or lien against a vehicle which is subject to the [15 or more model year old exclusion] and which arises after such vehicle becomes subject to the operation of [such exclusion] *may* be perfected in the same manner as such security interests and liens are perfected on vehicles required by this chapter to have certificates of title.

(iii) The transferee of any vehicle which is subject to the [15 or more model year old exclusion], regardless of whether that vehicle has a certificate of title issued pursuant to subparagraph (B) of this paragraph, shall take such vehicle subject to any security interest or lien perfected under this paragraph.

O.C.G.A. § 40–3–4(14)(B) & (C) (emphasis added). This section describes methods of perfecting security in vehicles which are not required to have a certificate of title in several different situations. The provision most applicable in the present case is found in subparagraph (C)(ii) which describes the scenario where the security interest arose after the vehicle became subject to the "15 or more model year old" exclusion. The key language there states that such vehicles "*may* be perfected" in the same manner as for vehicles required to have a certificate of title. The use of the word "may" is indicative of a choice, as if there are other methods of accomplishing such perfection. Perhaps the word choice means that perfection of security interests in vehicles not requiring a certificate of title is valid when completed in compliance with provisions of either the Georgia Title Act or the Georgia UCC.

Thus, some confusion is created by examination of O.C.G.A. § 40–3–4(14)(C)(ii). This statute, while not completely contradictory to the conclusion that security interests in vehicles not requiring a certificate of title should be perfected in compliance with Georgia UCC provisions, does add some doubt to its validity. Instead of looking exclusively to the Georgia UCC for guidance, it appears, now, that the Georgia Title Act is an additional option. However, the provision does not go as far as Debtors might like in that it does not provide that compliance with Title Act provisions is the exclusive means of perfecting security interests in vehicles not requiring a certificate of title. If it had been intended to reach such a conclusion, the choice-indicating word "may" would not have been utilized. Instead, words such as "may only" could have easily been substituted there.

Further support for the Court's conclusion that the Georgia Title Act does not provide the exclusive means of perfection of Minute Man's security interest in the Chevrolet pickup truck is found by examining the evolution of the former Georgia statutes regarding "previously registered vehicles." These statutes were discussed earlier in the opinion, but a brief review here will be helpful. When the *Maley* case was decided, security interests in a "previously registered vehicle" were to be perfected in accordance with guidelines set out in the Georgia Title Act. At that time, the term "previously registered vehicle" included vehicles which were "not required to have a certificate of title by section 68–406a, subsection (a)." That section excluded from the requirement for a certificate of title vehicles with a 1962 or prior model year. However, by 1981, section 68–406a(a) was amended by adding a cross-reference to section 68–404a(13) which contained the newly promulgated "15 or more model years old" exception to the requirement for a certificate of title. Therefore, by that time, the definition of "previously registered vehicle" included not only vehicles with model years prior to 1963, but also vehicles, like the one in question in the present case, which met the "15 or model years old" exception to a requirement for a certificate of title. Although there is no case law on point, a reasonable interpretation of the statutes at that time would lead to the conclusion that security interests in vehicles fifteen or more model years old were to be perfected as provided in the Title Act, even though no certificate of title would have otherwise been required.

At this point, it is important to recall that the "subject to a central filing statute" exclusionary language of the Georgia UCC was deleted in 1978, leaving only the language excepting "vehicles requiring a certificate of title" from its governance. Thus, one search-

ing for the rules regarding perfection of security interests in vehicles not requiring a certificate of title might never have arrived at the "previously registered vehicle" provisions. Further complicating the matter of interpreting the statutes is the fact that the "previously registered vehicle" provisions were repealed in 1990. The repealing of these provisions might be construed as legislative intent to no longer require security interests in vehicles not requiring a certificate of title to be perfected under the Title Act. Unfortunately, there is no evidence to indicate whether that interpretation is correct or not. The only thing that is certain, is that yet another change took place in the relevant statutes which was completely overlooked by the cases which blindly follow *Maley*. This is particularly true with regards to the *Freeman* opinion which was decided in 1992, two years after the "previously registered vehicle" provisions were repealed.

In opposition, Debtors argue that another Georgia Title Act provision, O.C.G.A. § 40–3–53(f), completely contradicts the conclusion that the Georgia UCC should be utilized when perfecting security interests in vehicles not requiring a certificate of title. That section states the following:

> A lien on a vehicle for which a certificate of title is required shall be perfected and shall be valid against subsequent transferees and holders of security interests and liens only by compliance with this Code section. The procedure contained in this chapter *shall be the exclusive method for the perfection of liens on vehicles,* and no lien shall be effective as to a vehicle unless so perfected.

O.C.G.A. § 40–3–53(f) (emphasis added). This provision states, in no uncertain terms, that the Georgia Title Act provisions for perfection of security interests apply to "vehicles." There is no distinction made here between vehicles requiring a certificate of title and those which do not have such requirement. Nonetheless, an argument could be made that since this language appears as the second sentence of a provision in which the first sentence speaks of vehicles requiring a certificate of title, the word "vehicles" in the second sentence is meant to mean

"vehicles requiring a certificate of title." However, a historical look at the development of both of these sentences does not support such a conclusion.

The two sentences were not always placed beside one another. In the past, the language was essentially the same as it is today, however, the provisions each stood alone, separated by another provision. In 1974, for example, the first sentence was found in Ga. Code Ann. § 68–421a(c)(3) and the second sentence was found in Ga.Code Ann. § 68–421a(c)(5). Given the fact that, historically, the first sentence was not meant to control the second sentence, and in the absence of any evidence showing otherwise, it seems logical to conclude that the term "vehicles" should be interpreted to mean "all vehicles" as opposed to "vehicles requiring a certificate of title."

This conclusion creates a dilemma for the Court. On one hand, the Georgia UCC tells us the filing of a financing statement is "not necessary or effective" to perfect a security interest in property "[r]equired to have a certificate of title" under the Georgia Title Act. O.C.G.A. § 11–9–302(3)(b). Since security interests in vehicles not required to have a certificate of title are not excluded from the provisions of the Georgia UCC, it is logical to conclude that such security interests should be perfected by the filing of a UCC–1 Financing Statement. On the other hand, the Georgia Title Act not only permissively allows perfection of security interests in vehicles not required to have a certificate of title to be accomplished in accordance with its rules, *see* O.C.G.A. § 40–3–4(14)(C), but it insists upon compliance with its provisions with regards to perfection of security interests in "vehicles" (possibly to be interpreted as "*all* vehicles") in O.C.G.A. § 40–3–53(f).

The Court's dilemma is magnified by the relative positioning of these apparently contradictory provisions. The starting point for perfection of any personal property security interest issues should be the Georgia UCC. That set of rules expressly excludes from its reach, security interests in vehicles for which a certificate of title is required. O.C.G.A. § 11–9–302(3)(b). The next step is to look to the Georgia Title Act in order to determine

which kinds of vehicles are required to have a certificate of title. Vehicles "15 or more model years old" are listed among those vehicles which are not required to have a certificate of title. O.C.G.A. § 40–3–4(14)(A). Also found within subsection (14) of that section is the rule which *permits* security interests in vehicles falling within that "15 or model year old" exception to the requirement for a certificate of title to be perfected under the guidelines of the Georgia Title Act. *See* O.C.G.A. § 40–3–4(14)(C). Thus, if one were analyzing whether a certificate of title is required for vehicle more than fifteen model years old (in order to see if the perfection of a security interest in such vehicle is excluded from the provisions of the Georgia UCC), it is not inconceivable that one would come across this "permissive" rule later in the same subsection relating to such vehicles. However, it is quite different to say that such a person would discover the rule stating that compliance with the provisions of the Georgia Title Act is the exclusive means of perfecting security interests in all vehicles because that rule appears in a completely different section, much later in the Act. It is most likely that a reasonably diligent person who would read the Georgia Code to determine the method of perfecting a security interest in a vehicle "15 or more model years old" would never see that rule at all. In fact, because of where that rule appears in the Georgia Code, it is practically a nullity. The progression of logical legal research never leads to that section.[5]

Thus, the Court is left with the task of deciphering the intended rule from seemingly conflicting statutory provisions. On one side of the scale, there is a rule which seems to give creditors holding security interests in vehicles which were more than fifteen model years old at the time the security interest attached the choice of perfecting under the provisions of either the Georgia UCC or the Georgia Title Act. *See* O.C.G.A. § 11–9–302(3)(b) (supports, by negative implication,

the propriety of filing a financing statement in order to perfect a security interest in vehicles not required to have a certificate of title); *see also* O.C.G.A. § 40–3–4(14)(B)(ii) (Security interests of this type "*may* be perfected in the same manner as such security interests and liens are perfected on vehicles required by this chapter to have certificates of title.") (emphasis in parenthetical quote added). On the other side, is a peculiarly located rule stating that "[t]he procedure contained in [the Title Act] shall be the exclusive method for the perfection of liens on vehicles, and no lien shall be effective as to a vehicle unless so perfected." O.C.G.A. § 40–3–53(f). The Court must turn to the rules of statutory construction for assistance in this endeavor to determine the legislative intent of this statutory scheme.

### B. Rules of Statutory Construction

In understanding the intent of these potentially contradictory provisions, several rules of interpretation are useful. First, legislation should be construed in such a way as to give " 'sensible and intelligent effect' to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless." *Sikes v. State*, 268 Ga. 19, 21, 485 S.E.2d 206, 208 (1997) (citing *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 266 Ga. 393, 399, 467 S.E.2d 875 (1996)). Accordingly, even though it is possible to conclude that the positioning of the second sentence of section 40–3–53(f) (hereinafter, "Title Act only provision") renders it meaningless, the Court must make an effort to give it meaning. Second, courts must "reconcile, if possible, any potential conflicts between different sections of the same statute, so as to make them consistent and harmonious." *Sikes*, 268 Ga. at 21, 485 S.E.2d at 208 (quoting *Ellis v. Johnson*, 263 Ga. 514, 515, 435 S.E.2d 923 (1993)). Therefore, the Court should try to make both the

---

5. Certainly, it becomes more likely that the provision would be found using a non-linear method of legal research such as computer database or manual index searching techniques. While those methods are useful, it is not appropriate for a court to hold a party responsible for what law might be found to exist in the statutes in the

course of such a search. Such a requirement would seem to represent a radical change in the law of statutory construction. The present method of requiring provisions to be organized under subject headings with any cross-references plainly stated seems to be the only approach which will consistently yield predictable results.

provisions in question have meaning, and also try to construe them in such a way as to have them unified in their purpose. Finally, "in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." *Sikes,* 268 Ga. at 21, 485 S.E.2d at 208–09 (citing *Alford v. Public Serv. Comm'n,* 262 Ga. 386, 387, 418 S.E.2d 13 (1992)). Thus, the Court must take into account all relevant provisions in determining the meaning of any one in particular.

These rules of construction put the Court in a position of having to construe the "Title Act only provision" such that it has meaning "consistent and harmonious" with the "may be perfected" provision of O.C.G.A. § 40–3–4(14)(C)(ii) and insuring that both provisions conform to the statutory scheme as a whole. The Georgia UCC excepts from its provisions vehicles, but only of the type which require a certificate of title. *See* O.C.G.A. § 11–9–302(3)(b). O.C.G.A. § 40–3–4 states which types of vehicles do not require a certificate of title. Vehicles fifteen or more model years old are included on this list of excluded vehicles. In that same section falls the "may be perfected provision" which allows creditors holding security interests in vehicles fitting that description to perfect such security interests under the provisions of the Title Act, if they so choose. At this point in the reasoning, there is no conflict. However, the difficulties arise when we put the "Title Act only provision" in the mix. In order to create harmony and consistency between all of the provisions, the Court cannot interpret that provision to mean that perfection of security interests in all vehicles can only be accomplished under rules of the Title Act. Such an interpretation would render the "may be perfected" language of O.C.G.A. § 40–3–4(14)(C)(ii) meaningless in violation of our first canon of statutory construction. Still the Court is left in a perplexing position.

Another rule of construction is of some use here. The Supreme Court of Georgia has stated that "a specific statute governs over a more general statute where they are in conflict." *Georgia Mental Health Institute v. Brady,* 263 Ga. 591, 592, 436 S.E.2d 219, 221 (1993) (citing *First Nat'l Bank v. Sinkler,* 170 Ga.App. 668, 670, 317 S.E.2d 897 (1984)). Since the "Title Act only provision" speaks of "vehicles" in generic terms, it can properly be construed as the general rule. However, a more specific statute on the same topic exists. The "may perfect provision" of O.C.G.A. § 4–3–4(14)(C)(ii) is such a rule, and, therefore, is controlling. As mentioned previously, this Court interprets that provision in such a way as to give creditors holding security interests in vehicles not requiring a certificate of title because they are fifteen or more model years old the choice of perfecting such security interest under the guidelines of the Georgia UCC or the Georgia Title Act. Although, that provision, on its face, only speaks of the option of perfecting under the Title Act, the use of the word "may" indicates that there must also be other options for accomplishing such perfection. This Court concludes that one also has the option of perfecting by filing a UCC–1 Financing Statement, as reinforced by the language of O.C.G.A. § 11–9–302(3)(b). Finally, this conclusion is given even more credence when one considers that, throughout the Georgia Title Act, most of the provisions relating to liens on vehicles are careful to limit their application to "vehicles requiring a certificate of title," [6] while just one provision, the "Title Act only provision" causing all of the interpretive difficulty in this case, speaks with such pervasive language. Thus, the conclusion that perfecting under either the Georgia UCC or the Georgia Title Act is effective holds true to the rule of statutory construction that "the court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." [7]

---

6. *See, e.g.,* O.C.G.A. § 40–3–50(a); O.C.G.A. § 40–3–58; O.C.G.A. § 40–3–53(f) (first sentence).

7. Recall that the announced purpose of the [Georgia UCC] [is] to provide a simple, clear, and modern law of commercial transactions, and the

purpose of the [Georgia Title Act] [is] to provide for a centralized titling of motor vehicles. The holding complies these stated purposes. In addition, the holding is derived through use of the rules of statutory construction by giving meaning to all relevant provisions, making certain that

### C. Proceeds

■ In the present case, Minute Man filed a UCC–1 Financing Statement properly perfecting its security interest in the 1966 Chevrolet pickup truck. That truck was traded-in as a means of facilitating the purchase of a 1967 Ford pickup truck. This Court holds that Minute Man is perfected in the Ford pickup truck by virtue of it being "proceeds" of the original collateral (the Chevrolet pickup truck).

Article 9 of the Georgia UCC states the following:

> "Proceeds" includes whatever is received upon the sale, exchange, collection, or disposition of collateral or proceeds.... Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "noncash proceeds."

O.C.G.A. § 11–9–306(1). In Georgia, perfection of a security interest automatically continues in proceeds for a period of ten days after receipt of the proceeds by the debtor. O.C.G.A. § 11–9–306(3). However, absent the filing of a new financing statement to perfect the proceeds, the general rule is that this perfected status will cease at the expiration of the ten-day grace period. *Id.* However, perfection of the security interest in the proceeds will continue in spite of the expiration of the ten days where "a filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may ... be perfected in the office or offices where the financing statement has been filed." O.C.G.A. § 11–9–306(3)(a). ·

In the present case, Debtors traded-in or "exchanged" the 1966 Chevrolet pickup truck in the transaction to purchase the 1967 Ford pickup truck. Accordingly, the 1967 Ford pickup truck qualifies as "proceeds" within the meaning of O.C.G.A. § 11–9–306(1). Furthermore, since perfection of the Ford pickup truck could have been accomplished by filing a financing statement in the same office where the financing statement for the Chevrolet pickup was filed, the perfection of Minute Man's security interest has continuously remained intact. O.C.G.A. § 11–9–306(3)(a).

### II. Good Faith Objection

■ Minute Man argues, in the alternative, that Debtors' plan should not be confirmed because it is not proposed in good faith as required by 11 U.S.C. § 1325(a)(3). Specifically, Minute Man contends that Debtors engaged in conversion of its collateral by trading-in the Chevrolet pickup truck in the Ford pickup truck purchase transaction, without notifying them. Given this Court's conclusion as to the issue of proceeds, Minute Man has not been injured by this act of Debtors. Therefore, the Court will overrule Minute Man's good faith objection to confirmation.

### Conclusion

In sum, a security interest in a vehicle not required to have a certificate of title because it is fifteen or more model years old may be perfected either by filing a financing statement in accordance with Georgia UCC provisions or by having the lien registered on a certificate of title (which may first be ob-

---

there is congruence in such meanings, and remaining true to the statutory scheme as a whole. While the holding that perfection of security interests in vehicles not requiring a certificate of title may be accomplished under the provisions of either the Georgia UCC or the Georgia Title Act may not be the most efficient rule, it does not create any unnecessary complications for creditors trying to determine whether other creditors hold liens on a vehicle not required to have a certificate of title. Such creditors have only to check both certificate of title and UCC–1 filings records. If this Court were to draft its own rule to better meet the stated purposes of both Acts, such a rule might provide as follows: Perfection of security interests in vehicles required to have a certificate of title can only be accomplished by having such lien registered on the certificate of

title through the procedures outlined in the Georgia Title Act; perfection of security interests in vehicles for which no certificate of title is required can only be accomplished by filing a UCC–1 financing statement through the procedures outlined in the Georgia UCC. Such a rule would apply even where, although not required, a certificate of title exists. It seems profoundly essential that the rules of perfection of an interest in property should not be optional, but should be singular and specific. The reality is that the requirement for proof of ownership by title becomes impractical in the case of an aging vehicle. Just as it happens that such vehicles become exempt from the requirement of a title at a point in time, so too should the method of perfection correspond with this transition, not as an option, but as a mandatory provision· of law.

tained where none exists) in accordance with the provisions of the Georgia Title Act. Therefore, Minute Man properly perfected its security interest in the 1966 Chevrolet pickup truck by filing a UCC–1 Financing Statement in the Lee County Superior Court Clerk's Office on March 19, 1996. Such security interest has continued to be perfected in the 1967 Ford pickup truck as proceeds of the original collateral. Therefore, Minute Man's claim should be treated as secured, and its Objection To Confirmation will be sustained.

An Order in accordance with this Memorandum Opinion will be entered on this date.

## ORDER

In accordance with the Memorandum Opinion entered on this date, it is hereby

ORDERED that Minute Man's Objection To Confirmation on the grounds that Debtors plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3) is overruled; and it is hereby further

ORDERED that Minute Man's Objection To Confirmation on the grounds that its claim should be treated as secured is sustained.