44904. CITY OF ATLANTA et al. v. PACIFIC & SOUTHERN
COMPANY, INC., d/b/a WXIA TV et al.
(361 SE2d 484)

PER CURIAM.

In June 1987, the Public Safety Committee (Committee), a

standing committee of the Atlanta City Council, scheduled a special meeting to be held on June 25, 1987, so that Committee members could be briefed by Public Safety Commissioner George Napper with regard to a report resulting from an internal investigation "into the handling by police officers and other city officials of complaints brought to certain police officers by Mrs. Alice Bond regarding her husband and others."[1] When the Committee announced that this meeting would not be open to the public, the three appellees involved in this case filed for mandamus and injunctive relief under OCGA § 50-14-1 et seq., the Open Meetings Act, to require the Committee to open the meeting to the public. The trial court granted a writ of mandamus, requiring that any meeting of the Committee at which the so-called "Bond report" was to be discussed must be open to the public. The trial court further entered a temporary restraining order enjoining Commissioner Napper from showing the "Bond report" to any person outside the Executive Branch of city government until the report had been inspected *in camera* by a judge of the superior court to determine whether privileged or confidential material must be expunged under the Open Records Act, OCGA § 50-18-70, or other authority.[2]

1. The City argues that the trial court erred in granting the writ of mandamus to require the Committee to open the meeting to the public. We disagree.

However, we find it unnecessary to reach the issues raised under the Open Meetings Act because the Charter of the city and the city code require *all* meetings of the council and of its committees to be open to the public. The Charter of the City of Atlanta, Chapter 3, Section 2-303, provides, "All meetings of the council and of its committees shall be open for attendance by the public as provided by law. . . ." Section 1-1013 of the Atlanta City Code is worded identically. We are aware that it can be argued the words "as provided by law" render the charter and ordinance provisions merely references to other sources of law as the authority for determining whether meetings are to be open to the public. But we are compelled to give meaning to the words "all meetings . . . shall be open." The import is quite plain. They leave no room for closed meetings. Thus we construe the charter and ordinance provisions to require all meetings of the council and of its committees to be open to the public. We know of no reason

---

[1] This is the purpose of the internal investigation and resulting report as stated in the affidavit of Barbara Asher, chairperson of the Public Safety Committee. The report is not in the record before us.

[2] The City then filed a "motion to set aside the judgment" and a "motion to modify or dissolve" the temporary restraining order in Fulton Superior Court. These motions were heard by a different superior court judge who denied them both.

the city may not provide its citizens greater access to its meetings than may be required as a minimum by state law. Therefore we are guided by the Charter provision and uphold the trial court's judgment on that basis.

2. The trial court entered a temporary restraining order[3] enjoining Commissioner Napper from showing the "Bond report" to anyone outside of the Executive Branch of Atlanta city government until such time as a judge of the superior court could conduct an *in camera* inspection to determine whether any portions of the report are subject to the exclusions of the Open Records Act, OCGA § 50-18-72, and further, to determine whether under any applicable state or federal rights of privacy laws any portion of the report is required to be kept confidential.

a. The issue of whether the "Bond report" is a public record "open for a personal inspection [by] any citizen of this state," OCGA § 50-18-70, is not involved here as none of the parties to this case have asserted any rights to the report under the Open Records Act. Neither, therefore, is the issue of whether the report is subject to the *exclusions* of the Open Records Act, OCGA § 50-18-72, before us. Therefore the trial court erred in requiring an *in camera* inspection be conducted to determine whether the exclusions of OCGA § 50-18-72 apply to the report.

b. The trial court further erred in ordering that an *in camera* inspection be made to determine whether any privacy rights under federal or state law, beyond those enumerated in OCGA § 50-18-72, would be violated by briefing this report to the Public Safety Committee as none of the parties involved in this litigation have asserted a right to privacy. Nor has any party asserted that privacy rights of anyone who is not a party might be violated by disclosure.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED OCTOBER 28, 1987 —
RECONSIDERATION DENIED NOVEMBER 18, 1987.

*Marva Jones Brooks, Kendric E. Smith, Deborah McIver Floyd,* for appellants.

*James C. Rawls, V. Robert Denham, Jr., Jennifer Falk Weiss, Judson Graves, James Head, R. Keegan Federal, Jr., Anthony E.*

---

[3] The TRO in this case was entered more than 30 days ago, and under OCGA § 9-11-65 (b) should have expired unless extended by the trial court. However, the parties have chosen to treat this TRO as though it is currently in effect, and therefore we will assume that it is.