45047, 45048, 45049, 45050. THE ATLANTA JOURNAL & THE ATLANTA CONSTITUTION et al. v. BABUSH et al. (four cases).

(364 SE2d 560)

GREGORY, Justice.

Richard C. Coleman was demoted and relocated by the Department of Public Safety (DPS). This action of DPS arose out of allegations that Coleman endorsed ticket fixing by members of the State Patrol and obstructed a related internal investigation. He appealed to the State Personnel Board (Board) which assigned a hearing officer. Following a public hearing the officer reversed the action of DPS due to insufficient evidence. DPS applied to the Board for a review of the decision of the hearing officer. The Board conducted a review in a closed meeting and affirmed the hearing officer's decision.

During the meeting the Board first decided to grant a review, then went forward to hear oral argument from counsel followed by a review of the record. No new evidence was taken.

The Atlanta Journal and The Atlanta Constitution plus two editors (Newspapers) complained of the closed meeting and filed suit in superior court seeking declaratory and injunctive relief against the Board. The Attorney General, Michael J. Bowers, objected to the closing of the oral argument portion of the meeting. He brought suit against the Board in the name of the State, in his official capacity as Attorney General, and individually as a citizen (Bowers). The superior court combined the two suits and issued a judgment which declared that the Board was authorized to go into closed session for its deliberation of personnel matters. However, the court ruled that evi-

dence and oral argument must be presented in open session unless closed at the request of a party. All other relief was denied.

The Newspapers and Bowers filed separate appeals and the Board filed cross-appeals. We combined the appeals.

1. We must interpret a part of OCGA § 50-14-1 et seq., sometimes known as the Sunshine Law or the Open Meetings Act. We will quote the relevant portions of the Act.

OCGA § 50-14-1 (c): "All meetings of any agency at which proposed official action is to be discussed or at which official action is to be taken shall be open to the public at all times. No resolution, rule, regulation, ordinance, or other formal action of an agency shall be binding unless taken, made, or arrived at in compliance with this chapter. . . ."

OCGA § 50-14-4: "This chapter shall not apply to the following: . . . (6) Meetings when: (A) Any agency is discussing the appointment, employment, disciplinary action, or dismissal of a public officer or employee; or (B) Any agency is hearing complaints or charges brought against a public officer or employee unless he requests a public meeting. . . ."

All parties agree the Board is an agency to which the Open Meetings Act applies and the matter here is official action. The contention of the Board is that the matter falls within the excluded proceedings of subsection (6).

The trial court concluded exclusion (6) (B) applies and that Coleman did not request a public meeting. That would probably have led the trial court to hold that the Board acted within its power to close the meeting but for a rule the Board previously adopted in which no hearing shall be closed except to receive confidential evidence, and then only on request of a party. Ch. 478-1, Sec. E. 300, Par. E. 302, of the Rules and Regulations of the State of Georgia. By this rule, reasoned the court, the Board abjured the discretion it would otherwise possess under the Open Meetings Act to close the meeting.

2. Rule E. 302 provides in part that "[n]o hearing shall be held in closed or executive session; provided, that upon motion of either party the Board or hearing officer may close those parts of a hearing wherein evidence of a confidential nature is to be introduced." The trial court held that the review by the Board was a hearing. We agree that the full scope of matters cognizable before the Board includes matter within the general meaning of the word "hearing." (There can be oral argument, and even the presentation of additional evidence.) In the rule, however, a more limited meaning of "hearing" is given by the Board which the courts are bound to follow.

The rules make a clear distinction between a hearing and a review. "Hearing" is used narrowly by the rules to denote the initial evidentiary proceeding before the hearing officer or the Board. Rules,

Ch. 478-1, §§ E. 100 — E. 500. A "review" is a different proceeding in which the initial decision of the hearing officer is reviewed by the Board. Rules, Ch. 478-1, § 14.100, Par. 14.102.2.

This interpretation of the words "hearing" and "review" as used in the rules is consistent with the interpretation given them in the past by the Board. Unrefuted affidavits of members of the Board show all 200 reviews it conducted since 1985 were closed. This was due to the understanding of the members that a review was not a "hearing" to which E. 302 applied.

We agree with the view expressed in *United States v. Larionoff,* 431 U. S. 864, 872 (97 SC 2150, 53 LE2d 48) (1977) that in construing administrative rules, "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the [rule]." Should a court apply a different interpretation from that of the agency, the agency would simply be forced to modify the rule.

Under the foregoing principles we are bound to hold the trial court erred in applying Rule E. 302 to the review of the Board. This makes it necessary to determine if the review was excluded by OCGA § 50-14-4 (6) from the open meeting requirement of the Act.

3. The litigants have made eloquent and persuasive arguments for open government. We fully concur in the language of Mr. Jefferson cited by them: "If a nation expects to be both ignorant and free, it expects what never was and never will be." However, we are not empowered in this case to open or close the doors of government. Our limited function is to interpret the law of open meetings as enacted by the legislature.

We have previously observed that the Open Meetings Act "seeks to eliminate . . . closed meetings which engender in the people a distrust of its officials who are clothed with the power to act in their name." *McLarty v. Bd. of Regents,* 231 Ga. 22, 23 (200 SE2d 117) (1973); *The Atlanta Journal v. Hill,* 257 Ga. 398, 399 (359 SE2d 913) (1987). This continues to be our understanding of the purpose of the Act. In carrying out that purpose the General Assembly might have chosen to make the open meetings requirement absolute. However that was not the course followed. The Act very clearly excludes some meetings from its requirements. OCGA § 50-14-4 excludes certain investigative staff meetings, the deliberations and voting of the State Board of Pardons and Paroles, meetings of law enforcement agencies including the Georgia Bureau of Investigation and grand juries, meetings when any agency is discussing the future acquisition of real estate, meetings of a public hospital considering the grant of abortions, adoption proceedings, and finally the exclusion we consider here and quoted above. The latter is known as the personnel exclusion. OCGA § 50-14-4 (6).

The Newspapers point to sources beyond the words of the personnel exclusion in search of the legislative intent. It is observed, for instance, that the Act deals expressly with the State Board of Pardons and Paroles and excludes its deliberations and voting while it makes no such express reference to the State Personnel Board. This argument has merit so far as it goes but it fails in light of the plain words of the personnel exclusion. There is no doubt the personnel exclusion applies across the board to all "meetings" of "[a]ny agency." It has been expressly applied to the State Personnel Board. Op. Atty. Gen. 78-55. The intent is too plain to require a search elsewhere.

We hold that the Board's review of the decision of the hearing officer in Coleman's case fell within the personnel exclusion of the Open Meetings Act. During the course of the meeting the Board was either discussing disciplinary action (OCGA § 50-14-4 (6) (A)) or hearing complaints of charges brought against a public officer or employee (OCGA § 50-14-4 (6) (B)). Thus the meeting was lawfully closed. Coleman possessed the right to open the hearing portion of the meeting but he made no request.

The courts, the legislature, state agencies, the press, and the parties in this case, are all subject to the sovereign power of the people. Should the people decide to eliminate the personnel exclusion, it will happen. In the meantime we must recognize the exclusion whether or not we think it is a good idea.

*Judgment reversed. All the Justices concur, except Weltner, J., who dissents.*

WELTNER, Justice, dissenting.

It is uncontroverted that the Sunshine Law "was enacted in the public interest to protect the public — both individuals and the public generally — from 'closed door' politics and the potential abuse of individuals and the misuse of power such policies entail. Therefore, the Act must be broadly construed to effect its remedial and protective purposes." *Atlanta Journal v. Hill;* 257 Ga. 398, 399 (359 SE2d 913) (1987).

Thus, it follows necessarily that to construe the Act broadly requires that its exceptions be construed narrowly. See 73 AmJur2d 463, "Statutes," § 313 (narrow construction applied to statutory exceptions, particularly where the statute promotes public welfare or where, in general, the law itself is entitled to a liberal construction).

In the light of this analysis, I address the holdings of the opinion.

1. The majority holds that OCGA § 50-14-4 (6), which permits closed meetings when an "agency is discussing the appointment, employment, disciplinary action, or dismissal of a public officer or employee," applies in this case. Thus, they say, the Board may close its

meeting under this "personnel exception" of the Sunshine Law.[1]

To apply the majority's reasoning, however, is to write into the Sunshine Law a total exemption of the Board, which is the exact opposite of what the General Assembly has done. Because *all* of the work of the State Personnel Board concerns to some degree "personnel action" on the part of some public agency, the whole work of that Board now may be conducted in secret.

2. There is another reason, equally compelling, why the Board's meetings must be in the open.

*That is because the rules of the State Personnel Board expressly so provide.*

(a) Par. E. 302 of the Board's rules provides: "No hearing shall be held in closed or executive session. . . ."

In a recent case, we held: "But we are compelled to give meaning to the words 'all meetings . . . shall be open.' The import is quite plain. They leave no room for closed meetings." *City of Atlanta v. Pac. &c. Co.*, 257 Ga. 587, 588 (361 SE2d 484) (1987). The import — here too — is quite plain. In interpreting this same provision, the (former) Attorney General ruled: "In Regulation E.302 of the Rules and Regulations of the State Personnel Board . . . the board has required that all State Merit System appeals be heard in open meetings. Therefore, by regulation of the State Personnel Board, all hearings of State Merit System appeals must be in open meetings." Op. Atty. Gen. 78-55 at p. 121.

That ruling has stood unchallenged for ten years. Had the Board so desired, it could have altered its regulations to narrow its *own* requirement of public hearings for "all . . . appeals." Had it wished, the Board could have created a more restricted provision that would pertain *only* to the taking of testimony. This, of course, it has not done. Accordingly, the Board's rule must be held to apply to "all . . . appeals," and that includes, of course, the appeal of Captain Coleman.

(b) We should not attempt to avoid the implications of our very recent holding in *City of Atlanta*, supra, by expanding the term "hearing," as contained in the Board's rules, to include all the indicia of a judicial tribunal.

(Nor should we approve a "repeal" based upon evidence that the Board, in at least 200 instances since 1985, regularly has disregarded

---

[1] Reliance upon that exception is misplaced. The State Personnel Board at no time discussed whether *it* would (within the several elements of the "personnel exception") appoint, employ, discipline, or dismiss Captain Coleman. Indeed, the Board had no power to take *any* of those steps regarding Captain Coleman. Rather, its function was to provide a quasi-judicial administrative appeal of the personnel action of *another* agency of state government.

Hence, the State Personnel Board's disposition of an appeal from another agency's decision was no more "personnel action" than was the trial court's ruling in its subsequent review of this very case.

its own rules. See Opinion, p. 792.)

3. The exclusion of the public is forbidden by state statute and by the Board's own rules. While this court has the *power* to define away any or all of the rights granted to our citizens by the General Assembly,[2] our *duty* ought to lead us in other directions.

By saying that the Board's rule applies only to meetings at which testimony is received, the Board has repealed it. And by means of a talismanic invocation of "personnel," it has removed a state agency from the coverage of the Sunshine Law.

That is unfortunate. The Statute and the Rule would confer a vital and valuable right upon members of the public. It is a right that can be enforced.[3]

It is a right that *ought* to be enforced.

DECIDED FEBRUARY 5, 1988.

*Dow, Lohnes & Albertson, Terrence B. Adamson, Peter C. Canfield,* for Atlanta Journal and Atlanta Constitution et al.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, Dirk G. Christensen,* for Babush et al.

*Michael J. Bowers, Attorney General, George P. Shingler, Senior Assistant Attorney General,* for State of Georgia.

*Hull, Towill, Norman & Barrett, David E. Hudson, Sell & Melton, Ed S. Sell III, Young, Layfield & Rothschild, L. Martelle Layfield, Jr.,* amici curiae.

---

[2] Recall Bishop Hadley's famous phrase: "Nay whoever hath an absolute authority to interpret any written or spoken laws it is he who is the lawgiver to all intents and purposes and not the person who first wrote or spake them." H. L. A. Hart, *The Concept of Law,* Oxford, 1962, p. 137.

[3] "Where the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that a plaintiff is interested in having the laws executed and the duty in question enforced." OCGA § 9-6-24.