## A01A0238. MOON v. TERRELL COUNTY et al.
(548 SE2d 680)

BARNES, Judge.

Terence Moon sued Terrell County and four of its county commissioners, Wilbur Gamble, Lucius Holloway, Larry Atherton, and Warren Anthony, alleging that the defendants violated several provisions of the Open Meetings Act, OCGA § 50-14-1 et seq., regarding a special meeting that was called to determine whether he would continue to be employed as the Deputy Warden of the Terrell County Corrections Institute (TCCI). Moon sought to have the court void the board's action terminating his employment and also sought attorney fees and expenses. After a bench trial, the trial court granted judgment to the defendants, holding that they did not violate the Open Meetings Act.

Moon enumerates four errors on appeal, alleging among other things that the trial court erred in holding that closing the session was permissible and that the minutes adequately reflected the names of the commissioners who voted to close the meeting. Because we conclude that the board failed to follow the procedures of the Open Meetings Act, we reverse.

Moon began working for Terrell County at TCCI as its business manager in 1991 and, after attending special training, became a corrections officer and eventually the deputy warden. The state contracts with the county to house state prisoners in TCCI, and while the state cannot direct the county to fire an employee, it can direct the county not to allow an employee to have any contact with the state inmates. If an employee cannot contact state inmates, that employee cannot function as a deputy warden. The state requires a deputy warden, a warden, and a business manager at each county facility that houses state inmates.

On December 9, 1997, the state coordinator for the Georgia Department of Corrections, County Facilities Division (DOC), faxed a memo to TCCI's acting warden, advising him that (1) Moon had failed to appear twice for polygraph examinations that were scheduled in response to an investigation regarding a former inmate's allegations of criminal misconduct by Moon, and therefore (2) could no longer have contact with state prisoners.[1] That same day, the acting warden notified Moon by memo that, because the DOC had directed that Moon could no longer supervise state inmates in any manner, Moon was suspended until further notice. Also on December 9, 1997, the chairman of the Terrell County Board of Commissioners called a

---

[1] Moon contends he did not refuse to take a polygraph, but rather that he could not attend the first scheduled polygraph due to a death in his family and that he asked for an explanation of the accusations against him before taking the second one.

special board meeting for December 10, 1997, to consider Moon's continuing employment with the county.

At 4:50 p.m. on December 10, 1997, four of the five board members met, with Moon and the acting warden in attendance. After the chairman called the meeting, the board went into a closed session, then opened the session briefly and concluded the meeting. The minutes of the board meeting reflected that the purpose of the meeting was to discuss a personnel issue with Moon and that at the end of the meeting, the board approved a motion to accept Moon's resignation if submitted within 24 hours. The minutes were subsequently amended to show that the board approved a motion to accept Moon's resignation within 24 hours in lieu of terminating him.

On December 12, 1997, the board chairman sent a letter to Moon, stating as follows:

> As of 5:00 PM, December 11, 1997, your employment with Terrell County Correctional Institute is terminated. Terrell County was notified on December 9, 1997, by Georgia Department of Corrections that you could no longer have any contact with any state inmates and could no longer serve in the capacity of Deputy Warden. Upon this notification the Terrell County Board of Commissioners have [sic] no choice but to terminate your employment.

1. Moon argues that the trial court erred in concluding that the board was authorized to hold a closed session under OCGA § 50-14-3 (6), which provides that meetings do not fall within the statute when they involve "discussing or deliberating upon the . . . dismissal . . . of a public officer or employee but not when receiving evidence or hearing argument on charges filed to determine disciplinary action or dismissal of a public officer or employee." The DOC letter notifying the TCCI that Moon could no longer supervise state prisoners constituted evidence, Moon argues, which the board improperly received at a closed session.

The defendants respond that they did not receive evidence as contemplated within the statute, because the closed session was not a hearing to determine facts. The board chairman testified that he called the meeting because the DOC told him that if Moon remained as deputy warden, the state would remove its prisoners from the county facility and terminate its state funding.

"[T]he Open Meetings Act seeks to eliminate closed meetings which engender in the people a distrust of its officials who are clothed with the power to act in their name." (Citations and punctuation omitted.) *Atlanta Journal &c. v. Babush*, 257 Ga. 790, 792 (3) (364 SE2d 560) (1988) (discussing OCGA § 50-14-4 (6), the predeces-

sor to OCGA § 50-14-3 (6), which did not require that personnel-related meetings at which evidence is received must be open). Any exception to the requirement that meetings shall be open must be strictly construed. *Steele v. Honea*, 261 Ga. 644, 645 (1) (b) (409 SE2d 652) (1991).

The board argues that Moon waived the requirements of the Open Meetings Act. After calling the meeting to order, the chairman asked Moon if he would prefer to remain in open session or go into a closed session. Moon chose a closed session. The statute, however, directs that "[t]he public at all times shall be afforded access to meetings declared open to the public." OCGA § 50-14-1 (c). Because the public has the right to access, one citizen cannot elect to close a meeting that should be open.

In this case, the record establishes that the board acted pursuant to the letter from the DOC, which was clearly considered because it was the stated basis for Moon's termination.[2] The trial court erred in concluding that the board's actions did not violate OCGA § 50-14-3 (6). Because the board violated the Open Meetings Act in conducting the closed sessions, the actions taken during that meeting are void. OCGA § 50-14-1 (b).

2. Moon contends the trial court erred in finding that the board complied with the requirements of OCGA § 50-14-4, which mandates that the minutes reflect the names of those commissioners who voted to close it. Terrell County responds that the Open Meetings Act provides in another section that "[i]n the case of a roll-call vote the name of each person voting for or against a proposal shall be recorded and in all other cases it shall be presumed that the action taken was approved by each person in attendance unless the minutes reflect the name of the persons voting against the proposal or abstaining." OCGA § 50-14-1 (e) (2). Because the board does not have a roll call, it argues, we can presume that every commissioner present voted for the motion to close the meeting.

As discussed in Division 1, we must strictly construe the exceptions to the Open Meetings Act. *Steele v. Honea*, supra, 261 Ga. at 645. Further, "a specific statute governs over a more general statute where they are in conflict." *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 592 (2) (436 SE2d 219) (1993). The minutes do not reflect "the names of the members present and the names of those voting for closure" as required by OCGA § 50-14-4 (a), but only indicate the names of the commissioners moving and seconding the motion to go into closed session. We conclude that the trial court erred in holding

---

[2] As Presiding Judge Smith's special concurrence correctly points out, there is a paradox involved here in that the statute would have allowed the meeting to be closed had there been no evidence introduced.

that the minutes complied with the statutory requirements of OCGA § 50-14-4 (a).

3. In light of our holdings in Divisions 1 and 2, the remainder of Moon's arguments are moot.

*Judgment reversed. Phipps, J., concurs. Smith, P. J., concurs fully and specially.*

SMITH, Presiding Judge, concurring specially.

I fully concur with all that is said in the majority opinion. I write separately to note an issue that may arise from a strict or literal construction of OCGA § 50-14-3 (6). Under that subsection, a meeting is exempted from the provisions of the Open Meetings Act if discussions or deliberations occur concerning disciplinary action of a public officer or employee. If evidence is received, however, the meeting is not exempted.

Here, the board of commissioners acted on the basis of the letter from the Georgia Department of Corrections, County Facilities Division (DOC), which was considered during the closed portion of the meeting. Clearly, the letter was evidence, and strictly construing the Open Meetings Act, as we are required to do, we must conclude that an open meeting was necessary under OCGA § 50-14-3 (6). But a different result may have been warranted if the board members had simply discussed reasons for Moon's dismissal. Those reasons might have included, for example, a conversation between one of the board members and a DOC representative, without use of or reference to the letter from the DOC. Under a literal interpretation of the statute, a closed meeting in those circumstances may have been authorized. I question whether such a meeting, where simple hearsay may have served as a basis for dismissal, would have afforded Moon or any aggrieved member of the public the safeguards afforded by the Open Meetings Act.

DECIDED MAY 9, 2001.

*Brimberry, Kaplan & Brimberry, Jerry W. Brimberry,* for appellant.

*Collier & Gamble, Edward R. Collier,* for appellees.