**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES, J., PIPKIN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 14, 2023**

# In the Court of Appeals of Georgia

A22A1678, A23A0051. CARDINALE v. WESTMORELAND et al.; and vice versa.

MILLER, Presiding Judge.

In the latest chapter of the long-running dispute between Matthew Charles Cardinale and the City of Atlanta,[1] Cardinale, proceeding pro se, seeks review after the trial court issued various rulings dismissing and/or granting summary judgment on some of his claims against various City Council members and officials under the Georgia Open Records Act, OCGA § 50-18-70, et seq., and the Georgia Open Meetings Act, OCGA § 50-14-1, et seq., and City of Atlanta council members Matt Westmoreland and Jennifer Ide cross-appeal from the partial denial of their motion

---

[1] See, e.g., *Cardinale v. Keane*, 362 Ga. App. 644 (869 SE2d 613) (2022); *Cardinale v. City of Atlanta*, 290 Ga. 521 (722 SE2d 732) (2012), superseded by statute in part as recognized by *Lue v. Eady*, 297 Ga. 321, 331 (3) (b) (773 SE2d 679) (2015).

for summary judgment. In Case No. A22A1678, Cardinale argues that (1) the trial court erroneously ruled that he could not bring a claim for civil penalties against three defendants under the Georgia Open Records Act; (2) the trial court erroneously ruled that his claim for an injunction and in camera inspection for various record requests was moot; and (3) the trial court erroneously concluded that Westmoreland and Ide were entitled to official immunity for their acts in voting to enter special executive sessions.[2] In Case No. A23A0051, Westmoreland and Ide argue that they had official immunity for their acts in approving the minutes to two City Council meetings and that, alternatively, Cardinale failed to show that they were negligent or otherwise violated the Open Meetings Act by approving such minutes.

In Case No. A22A1678, we conclude that the trial court erred in determining that Cardinale could not bring a claim for civil penalties under the Open Records Act, but the trial court correctly found that Cardinale's claim for an injunction and in camera inspection was moot and that Westmoreland and Ide were entitled to official immunity for voting to enter the special executive sessions. Thus, we affirm the trial court's orders in part and reverse in part.

---

[2] An "executive session" is the official term under the Open Meetings Act for "a portion of a meeting lawfully closed to the public." OCGA § 50-14-1 (a) (2).

2

In Case No. A23A0051, we conclude that the council members' acts in approving the minutes of two meetings that were closed to the public were ministerial in nature and that genuine issues of material fact remain as to whether their approval of minutes that did not comply with the Open Meetings Act was negligent. Accordingly, we affirm the trial court's denial of summary judgment on these claims.

"Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case." (Citation omitted.) *United HealthCare of Ga., Inc. v. Ga. Dept. of Community Health*, 293 Ga. App. 84 (666 SE2d 472) (2008). Additionally,

> [a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation omitted.) *Williams v. Dekalb County*, 308 Ga. 265, 270 (2) (840 SE2d 423) (2020).

So viewed, the record shows that, in early 2020, the City of Atlanta Council was considering a proposed ordinance concerning housing in the City. The ordinance proposed a ban on source-of-income discrimination in the sale or rental of dwellings within the City. The ordinance was referred for consideration to the Community Development and Human Services Committee, chaired by Westmoreland, and the Finance and Executive Committee, chaired by Ide. Cardinale, who has a long history of litigation with the City, expressed his opposition to the ordinance in emails and public comments and also requested that the Georgia Attorney General issue an opinion on the legality of the ordinance.

At a meeting on February 11, 2020, citing attorney-client privilege, the Community Development and Human Services Committee voted to enter a special executive session that would be closed to the public so it could consult with counsel regarding their litigation strategy for the ordinance. Similarly, at a meeting on February 12, 2020, the Finance and Executive Committee also voted to enter a special closed session while citing attorney-client privilege.

Cardinale subsequently made multiple record requests to the City concerning its actions at the February 2020 meetings. On February 23, 2020, Cardinale sent an open records request to Amber Robinson, the records coordinator of the City's

4

Department of Law, seeking any documents related to "a realistic and tangible threat of litigation" that would have supported the Council's decision to enter into closed sessions. Cardinale sent at least three more requests to Robinson seeking the same documents related to any realistic threat of litigation. Robinson replied to each request that the documents were privileged.

In a separate chain of events, in February and March 2020, Cardinale sent two open records requests to the City's open records coordinator Michael Smith seeking a copy of the franchise agreement between the City and Comcast of Georgia/Virginia, Inc. In May 2020, Alisha Wyatt-Bullman, former counsel for the City, responded to the initial February request and stated that the City was unable to locate any responsive records but directed Cardinale to an internet site wherein the agreement was publicly available.

Cardinale filed a complaint against the City, which initially challenged the City's policy barring members of the public from identifying themselves as candidates during City Council meetings. Eventually, Cardinale filed an eighth amended complaint which raised ten claims concerning the two February 2020 meetings and his subsequent related document requests. As relevant to these appeals, in Count Five, Cardinale raised a claim for an injunction to compel compliance with

his Open Records Act requests to obtain information about alleged threats of litigation against the City that the City used to justify closing the two February 2020 meetings. In Counts Six, Seven, and Eight, Cardinale sought civil penalties under the Open Records Act against Smith, Wyatt-Bullman, and Robinson for their allegedly deficient responses to his various records requests. In Counts Nine and Ten, Cardinale sought civil penalties against Westmoreland and Ide for their allegedly negligent and improper decisions and votes to close the February 2020 meetings to the public. As part of the successive amendments to his complaint, Cardinale had filed a motion to add Westmoreland, Ide, and Robinson as defendants, which was pending at the time Cardinale filed the eighth amended complaint.

After the defendants collectively moved to dismiss the complaint, the trial court granted the motion in part and denied it in part. As relevant to this appeal, the trial court concluded that Count Five of the complaint was moot because Cardinale had admitted in the eighth amended complaint that he eventually received the documents as part of discovery. The trial court further concluded that Counts Six, Seven, and Eight were due to be dismissed because Cardinale, as a private party, did not have a cause of action to seek civil penalties under the Open Records Act. In the process, the trial court denied Cardinale's motion to add Robinson as a party defendant. The trial

6

court finally ruled that Counts Nine and Ten would be allowed to proceed and granted the motion to add Westmoreland and Ide as defendants.

After further litigation, Cardinale eventually filed an Eleventh Amended Complaint, which appears to be the current operative pleading. By this point, Cardinale had added two claims (Counts Eleven and Twelve) which sought civil penalties against Westmoreland and Ide for their failure to provide the specific reasons for the closure of the February 2020 meetings on the official minutes of each meeting. The parties then filed cross-motions for summary judgment.

Following a hearing, the trial court granted the defendants' motion in part and denied it in part and denied Cardinale's motion. The trial court ruled that Westmoreland and Ide were entitled to official immunity on Counts Nine and Ten because their acts in voting to move the meetings into executive sessions were discretionary in nature and because Cardinale did not allege that they acted with actual malice. On the other hand, the trial court ruled that Westmoreland and Ide were not entitled to official immunity on Counts Eleven and Twelve because their acts to approve the meeting minutes were ministerial acts, and there was at least some evidence in the record establishing that the minutes did not comport with the Open

Meetings Act and that the council members were negligent in approving them. These appeals followed.

*Case No. A22A1678*

1. In two related enumerations of error, Cardinale first argues that the trial court erred by concluding that he could not bring a claim for civil penalties against Wyatt-Bullman, Smith, and Robinson under the Georgia Open Records Act. After the trial court entered its order dismissing Cardinale's claims against Wyatt-Bullman and Smith and denying his request to add Robinson as a party defendant, we decided *Cardinale v. Keane*, 362 Ga. App. 644, 646-648 (1) (869 SE2d 613) (2022), wherein we held that private citizens such as Cardinale do have a cause of action for civil penalties under the Open Records Act. Accordingly, we reverse the trial court's order holding to the contrary and remand to address the remaining arguments that the defendants presented in their motion to dismiss.[3]

---

[3] We decline the defendants' invitation to affirm the dismissal of these claims under our "right for any reason" rule based on arguments the trial court did not address in the first instance. See *Gastel v. DeKalb County*, 360 Ga. App. 449, 451 n.4 (861 SE2d 434) (2021) (declining to address "the varied and, as of yet, unaddressed claims" raised by the parties under our right-for-any-reason rule); *Miller v. Lynch*, 351 Ga. App. 361, 367 (1) (830 SE2d 749) (2019) (declining to address an issue under our right-for-any-reason rule before the trial court has done so).

2. Cardinale next argues in two related enumerations of error that the trial court erroneously found that Count Five, pertaining to his request for injunctive relief and his subsequent request for the trial court to conduct an in-camera inspection of any records allegedly withheld due to attorney-client privilege,[4] were moot because he acknowledged in his eighth amended complaint that he had received the relevant documents as part of discovery. Although Cardinale finds fault with the trial court's logic and argues, on principle, that there may theoretically be documents out there that fell under the record request but not his discovery request, Cardinale neither alleges nor points to record evidence showing that he did not *actually* receive the complete set of documents he requested. Compare *Jaraysi v. City of Marietta*, 294 Ga. App. 6, 9-12 (2) (668 SE2d 446) (2008) (summary judgment on a claim under the Open Records Act was improper when a fact issue existed as to whether the open records claimants actually received all of the documents they sought). He also does not allege that the City is continuing to withhold documents under an attorney-client privilege so that an in camera review would be warranted. See *Williams v. DeKalb*

---

[4] OCGA § 50-18-72 (a) (41) provides in part that "when an agency withholds information [claiming attorney-client privilege], any party authorized to bring a proceeding . . . may request that the judge of the court in which such proceeding is pending determine by an in camera examination whether such information was properly withheld[.]"

9

*County*, 364 Ga. App. 710, 728-730 (3) (875 SE2d 865) (2022) (concluding that a bona fide dispute over whether certain documents currently being withheld are properly designated as privileged "is what is required to secure an in camera review."). In any event, Cardinale did not argue below that the records he obtained were incomplete, and so these enumerations of error present nothing for us to review. See *Wyatt Processing, LLC v. Bell Irrigation, Inc.*, 298 Ga. App. 35, 36 (679 SE2d 63) (2009) ("On appeal, this [C]ourt does not review issues which were not raised and ruled on below.") (citation and punctuation omitted).

3. Cardinale further argues that the trial court erred by concluding that Westmoreland and Ide were entitled to official immunity for Counts Nine and Ten, which sought civil penalties for their decision to enter into executive sessions during their February 11, 2020, and February 12, 2020 meetings to discuss potential litigation over the housing ordinance. He specifically challenges the trial court's ruling that the council members' decision to enter into the executive sessions was a discretionary act for which Cardinale was required to show that they acted with actual malice. We agree with the trial court that the City Council's decision to enter an executive session was a discretionary act, and so we affirm the grant of summary judgment on these claims.

10

Under Georgia law,

> [t]he doctrine of official immunity, also known as qualified immunity, affords limited protection to public officers and employees for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption. A public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight. Thus, the single overriding factor is whether the specific act from which liability arises is discretionary or ministerial.

(Citations and Punctuation Omitted.) *Howell v. Willis*, 317 Ga. App. 199, 200-201 (729 SE2d 643) (2012); see also Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation omitted.) *Murphy v. Bajjani*, 282 Ga. 197, 199 (1) (647 SE2d 54) (2007). "The determination of whether an action is discretionary or ministerial depends on

11

the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." (Citation omitted.) *Davis v. Effingham County Bd. of Commrs.*, 328 Ga. App. 579, 584-585 (2) (760 SE2d 9) (2014).

> The mere fact that [a complained-of act] was simple and definite does not make it a ministerial act; to make it so, it must be done in the execution of a specific duty. A ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisor's specific directive, or a statute. But [p]rocedures or instructions [in a policy or a statutory directive] adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.

(Citations and punctuation omitted.) *Roper v. Greenway*, 294 Ga. 112, 114-115 (751 SE2d 351) (2013).

Our analysis of the Open Meetings Act is guided by our familiar principles of statutory interpretation:

> A statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review

12

the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

(Citations and punctuation omitted.) *Patton v. Vanterpool*, 302 Ga. 253, 254 (806 SE2d 493) (2017). "We have previously observed that the Open Meetings Act seeks to eliminate closed meetings which engender in the people a distrust of its officials who are clothed with the power to act in their name." (Citations and punctuation omitted.) *Atlanta Journal v. Babush*, 257 Ga. 790, 792 (3) (364 SE2d 560) (1988). "To further this purpose, the Act, including its default position that meetings be open, must be construed broadly, and any exceptions to the Act, including those pertaining to closed meetings, must be narrowly construed." (Citations omitted.) *Claxton Enterprise v. Evans County Bd. of Commrs.*, 249 Ga. App. 870, 873 (2) (549 SE2d 830) (2001).

Thus, under the Open Meetings Act, "[e]xcept as otherwise provided by law, all [agency] meetings shall be open to the public." OCGA § 50-14-1 (b) (1). Additionally, "[w]hen any meeting of an agency is closed to the public pursuant to any provision of this chapter, . . . the meeting shall not be closed to the public except

13

by a majority vote of a quorum present for the meeting[.]" OCGA § 50-14-4 (a). Nonetheless, the Act further provides that

> [t]his chapter shall *not* be construed so as to repeal in any way [t]he attorney-client privilege recognized by state law to the extent that a meeting otherwise required to be open to the public under this chapter may be closed in order to consult and meet with legal counsel pertaining to pending or potential litigation, settlement, claims, administrative proceedings, or other judicial actions brought or to be brought by or against the agency or any officer or employee or in which the agency or any officer or employee may be directly involved[.]

(Punctuation omitted; emphasis supplied.) OCGA § 50-14-2 (1).

With these principles in mind, we conclude that the decision by the council members to enter into an executive session was a discretionary act, rather than a ministerial act. Pretermitting whether agency members need to use their discretion to determine whether the attorney-client privilege applies to a matter of discussion, the Open Meetings Act does not *mandate* that an agency must automatically enter into a closed session when discussing privileged material, but instead provides that the agency must vote on the topic and that, only upon a majority vote, will the session be closed. See OCGA § 50-14-4 (a). The Act also does not provide any criteria or guidelines as to whether an agency should close a session when discussing potentially

14

privileged material, apparently leaving such considerations entirely up to the voting members of the agency. Thus, the Act does not provide any "simple, absolute, and definite" instructions for when an agency must enter into an executive session and does not "merely [require] the execution of a specific duty" to enter an executive session, see *Murphy*, supra, 282 Ga. at 199 (1) (citation omitted), but instead provides that an agency must use its discretion, expressed through a majority vote, to determine whether to close a meeting to discuss matters covered by the attorney-client privilege. "Absent such applicable standards, [Cardinale] cannot establish that the defendants' actions were ministerial – namely, that the procedures or instructions were so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." (Citation and punctuation omitted.) *Banks v. Happoldt*, 271 Ga. App. 146, 150 (2) (608 SE2d 741) (2004). Thus, we conclude that the decisions by the council members to enter into the February 2020 executive sessions were discretionary acts, not ministerial acts. See *Grammens v. Dollar*, 287 Ga. 618, 620-621 (697 SE2d 775) (2010) (policy requiring the use of eye-protection equipment when handling "explosive materials" set out a discretionary duty because the policy did not define the term "explosive materials," and so a teacher was required to

exercise discretion to determine whether a given material was "explosive" and thus whether the eye-protection policy applied in the first place).

Because Cardinale only alleged that the council members were negligent and did not allege or produce evidence that they acted with wilfulness, malice or corruption,[5] the council members are entitled to official immunity for his claims alleging that they violated the Open Meetings Act by using their discretion to enter into the executive sessions. Thus, the trial court correctly granted official immunity to Westmoreland and Ide on Counts Nine and Ten of Cardinale's complaint.[6]

*Case No. A23A0051*

---

[5] Cardinale argues that the trial court erred by failing to include in its order the facts that Westmoreland and Ide were trained in the requirements to hold open meetings. Because the question of the council members' training is not relevant to whether the act of closing the meeting itself is ministerial or discretionary, and because these facts do not necessarily show that the council members acted with willfulness, malice, or corruption, we conclude that this argument presents no basis for reversal.

[6] Because we conclude that the decision to close the meeting was discretionary, we do not reach Cardinale's argument that he demonstrated that the council members were negligent when they closed the meeting.

16

4. In their cross-appeal from the trial court's partial denial of their motion for summary judgment on Counts Eleven and Twelve,[7] which pertain to Cardinale's claims that Westmoreland and Ide negligently approved the February 2020 meeting minutes, Westmoreland and Ide argue that the trial court erred by concluding that they were not entitled to official immunity for the act of approving the minutes of the February 2020 executive sessions. They first argue that the trial court erred by concluding that the act of approving the minutes at the meetings was a ministerial duty because the act of voting on the approval of the minutes constitutes an act that requires their use of discretion. We conclude that the trial court correctly determined that the act of approving minutes is a ministerial duty.

The Open Meetings Act provides that

The regular minutes of a meeting subject to this chapter shall be promptly recorded and such records shall be open to public inspection once approved as official by the agency or its committee, but in no case later than immediately following its next regular meeting; provided, however, that nothing contained in this chapter shall prohibit the earlier release of minutes, whether approved by the agency or not. Such minutes shall, at a minimum, include the names of the members present

---

[7] The council members' motion to accept the late filing of their reply brief is GRANTED.

17

at the meeting, a description of each motion or other proposal made, the identity of the persons making and seconding the motion or other proposal, and a record of all votes.

OCGA § 50-14-1 (e) (2) (B). The Act further directs that "[w]hen any meeting of an agency is closed to the public pursuant to any provision of this chapter, the specific reasons for such closure shall be entered upon the official minutes[.]" OCGA § 50-14-4 (a).

We conclude that these directives set out a ministerial duty to approve the minutes. The Act requires an agency to approve the minutes within a specific time frame and then sets out requirements that the minutes must meet that are "so clear, definite and certain as merely to require the execution of a relatively simple, specific duty" in accordance with the Open Meetings Act. See *Roper*, supra, 294 Ga. at 115. The Act only requires that the minutes be prepared, set out certain facts that occurred during the meeting, and then be open to the public within a certain amount of time, and we see no real avenue for an agency to exercise discretion merely through approving the minutes of a meeting. See *McDowell v. Smith*, 285 Ga. 592, 593-594 (678 SE2d 922) (2009) (policy mandating that school officials must consult a student's information card and consult an administrator before releasing a student for

18

dismissal set out actions that "were simple, absolute and definite, and required the execution of specific tasks without any exercise of discretion" set out a ministerial duty). Moreover, to the extent that there may be discretion as to how or when an agency approves the minutes of a meeting, the Open Meetings Act nevertheless mandates that an agency prepare, approve, and release the minutes for a meeting, and so "[t]he execution of [that] specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion." (Citation omitted.) *Lincoln County v. Edmond*, 231 Ga. App. 871, 874 (2) (501 SE2d 38) (1998) (policy requiring a public officer to remove a tree lying across a road was ministerial even though it granted him discretion to choose the manner in which the task would be performed because the discretion as to how to remove the tree "did not change the fact that the tree *must* be removed."); see also *Wanless v. Tatum*, 244 Ga. App. 882, 884 (536 SE2d 308) (2000) (public employee had a ministerial duty to record and investigate complaints even if he had discretion "as to when to conduct the investigation"). While the fact that an agency must vote on an issue may certainly be indicative that the issue is discretionary, see, e. g., Division Three, *supra*, in this case, we cannot conclude that the mere fact that the council must vote to approve the

19

minutes necessarily renders the act of approving the minutes discretionary rather than ministerial.

Thus, we conclude that the trial court correctly determined that the council members' approval of the minutes of the Council's two February 2020 meetings was a ministerial duty.

5. Finally, we reject Westmoreland and Ide's contention that Cardinale failed to show that they were negligent in approving the minutes of the February 2020 executive sessions.

It appears to be undisputed that the official meeting minutes do not list "the specific reasons" for the closure of each meeting as required by the Open Meetings Act. The council members argue that they nevertheless satisfied this requirement because the reasons for the closure were contained in the affidavits they filed under OCGA § 50-14-4 (b) (1), which provides that

> [w]hen any meeting of an agency is closed to the public pursuant to subsection (a) of this Code section, the person presiding over such meeting or, if the agency's policy so provides, each member of the governing body of the agency attending such meeting, shall execute and file with the official minutes of the meeting a notarized affidavit stating under oath that the subject matter of the meeting or the closed portion

20

thereof was devoted to matters within the exceptions provided by law and identifying the specific relevant exception.

The council members argue that these affidavits were attached to the minutes as part of the official record and made available to the general public, and thus, they were "entered upon" the minutes as contemplated by OCGA § 50-14-4 (a).

As noted above, however, we must narrowly construe the exceptions to the Open Meetings Act that allow for closed meetings. *Claxton Enterprise*, supra, 249 Ga. App. at 873 (2). Reading OCGA § 50-14-4 (b) (1), we note that the section requires the affidavits from the agency members to be filed "*with* the official minutes," and so the Act appears to contemplate that the affidavits do not necessarily form part of the official minutes even though they may be attached together. Moreover, OCGA § 50-14-4 (a) requires "the specific reasons" for the closure of each meeting to be entered on the minutes whereas OCGA § 50-14-4 (b) (1) only requires the affidavit to list the "specific relevant [statutory] exception." We do not read these provisions to require the same thing. See *Pandora Franchising, LLC v. Kingdom Retail Group, LLLP*, 299 Ga. 723, 728 (1) (b) (791 SE2d 786) (2016) ("Where the legislature uses certain language in one part of the statute and different language in another, the Court assumes different meanings were intended.") (citation omitted).

21

Additionally, reading the statute to allow for the specific reasons listed in the OCGA § 50-14-4 (b) (1) affidavits – which must be filed in every case there is a closure – to satisfy the separate requirement in OCGA § 50-14-4 (a) that "the specific reasons for such closure shall be entered upon the official minutes" would render the requirement in OCGA § 50-14-4 (a) entirely superfluous because then the specific reasons would always be "entered upon" the minutes. See *Schick v. Bd. of Regents of Univ. Sys. of Ga.*, 334 Ga. App. 425, 432 (1) (779 SE2d 452) (2015) ("As a fundamental principle of statutory construction, we endeavor to give each part of the statute meaning and avoid constructions that make some language mere surplusage or meaningless.") (citation and punctuation omitted). Therefore, the fact that the specific reasons for the closure of each meeting were part of the publicly available affidavits does not mean that the minutes complied with the statutory requirements of OCGA § 50-14-4 (a). See *Moon v. Terrell County*, 249 Ga. App. 567, 569 (2) (548 SE2d 680) (2001) (meeting minutes did not comply with OCGA § 50-14-4 (a)'s requirement that the minutes "reflect the names of the members present and the names of those voting for closure" even though it could have easily been presumed under separate provisions of the Open Meetings Act that every commissioner present voted for closure).

Finally, on this record, we cannot conclude that there is no issue of material fact as to the council members' negligence in failing to comply with OCGA § 50-14-4 (a)'s requirement that the "specific reasons" for the closure be entered upon the minutes. Accordingly, we affirm the trial court's order denying Westmoreland and Ide's motion for summary judgment on Counts Eleven and Twelve.

*Judgment affirmed in Case No. A23A0051.*

*Judgment affirmed in part and reversed in part in Case No. A22A1678.  Hodges and Pipkin, JJ., concur.*